BEING CASES DECIDED BY THE OLD COURT AND ORDERED TO BE REPORTED IN VOL. 51, BUT WHICH WERE, BY MISTAKE, OMITTED FROM THAT VOLUME.

## LIBBEUS FRENCH vs. THE STATE.[1]

1. SHERIFF: *Right to collect taxes.*

Tax collector, as a distinct officer, is not mentioned in the constitutions of 1817 or 1832. Since 1843 the duties of tax collector have pertained to the office of sheriff. The constitution of 1869 is silent as to who shall collect taxes, but provides for the election of a sheriff, etc. When the people ratified this constitution they distinctly associated the office with the functions and privileges which before that pertained by law respectively to it. It would be too narrow a view to consider the framers of that instrument as referring alone to those functions incident to the sheriff at common law. When the constitution refers the election of this officer to the people, without indicating the nature of his functions other than the name itself imports, it must be implied that it means the sheriff, with such general attributes and authority as had been theretofore connected with the office, and declared in both the written and unwritten law. There is no provision in the Code of 1871 as to who shall collect taxes. The general subject of revenue having been revised and consolidated in the Code of 1871, all former laws in relation thereto are repealed by § 8 of that Code. Since 1871 the legislature has frequently referred to the collector as an officer established in the government, and has declared rules and regulations as to the collection of taxes. This is a contemporaneous legislative interpretation that the constitution intended that the

---

[1] NOTE.—This case was prepared and forwarded to the publishers to appear in Vol. 51, but in some way the MSS. were lost, and the reporters are without briefs of counsel to condense.

sheriff should have the rights, authority, and functions which pertained to him at common law, modified and suited to the condition of society here, and also those general rights which had been imposed by statute.

2. SAME: *Failure to execute separate bond as tax collector.*

The law from 1843 to 1871 required the sheriff to give two bonds, one as sheriff, the other as tax collector, and makes the failure to execute the bond a forfeiture of the office. The subject of collecting taxes being consolidated and revised in the Code of 1871, these laws were repealed by § 8 of the Code. There being no provision in the Code of 1871 requiring sheriffs to execute a bond as tax collector, the failure so to do does not vacate the office. Bonds which have been given by sheriffs for collecting and accounting for taxes are valid and may be enforced. Section 319 of the Code of 1871 has reference to the bond required of the sheriff by § 219, and not to any special bond which applies only to special duty.

ERROR to the Circuit Court of *Grenada* County.

Hon. E. S. FISHER, Judge.

The facts sufficiently appear in the opinion of the court.

*Harris & George,* for plaintiff in error.

*G. E. Harris,* Attorney General, and *M. C. Brady,* for State.

SIMRALL, J., delivered the opinion of the court.

The district attorney instituted a suit of *quo warranto* against Libbeus French, to oust him from the office of sheriff and tax collector of Grenada county, because he did not execute a bond as tax collector.

French was elected sheriff at the November election, 1873; took the oath, gave bond, and entered upon the duties of the office, 1st January, 1874. He did not execute a separate bond as tax collector, but avers in his answer that he offered to do so, which was declined by the authorities, acting under legal advice.

The subject may be considered under these subdivisions:

1. Was French, by virtue of his election and induction to the office of sheriff, charged with the duty of collecting the taxes?

2. Was he required to give a separate bond as tax collector, and did his failure to do so vacate the office?

Tax collector, as a distinct office, is not mentioned in the con-

stitutions of 1817 or 1832. Prior to 1841 it would seem that the duties of assessing and collecting taxes were united in the same person, who was elected by the people under the name of " assessor and collector." In that year the duties were separated, and two officers, assessor and collector, were elected. Two years afterwards, in 1843, by the 7th section of the " act to amend the revenue laws," from and after the 1st of November (1843) the office of tax collector was abolished, and all the duties * * * etc., shall be performed by the sheriffs of the several counties, " who shall give another bond for the collection of taxes, in the same penalty, and conditioned in manner prescribed for tax collectors." Subsequently, in 1844, by the 31st section of the act to amend and reduce into one the several acts in relation to the revenue * * * etc., there is a reënactment, in substance, of the 7th section of the act of 1843. Again, in 1846, there was a revision and consolidation of the revenue laws, which continued almost *in totidem verbis* the 7th section of the act of 1843, and 31st section of the act of 1844. See Acts 1844, pp. 79, 80. These provisions were substantially continued in the Code of 1857 (with some change in the phraseology), so that we have had from November, 1843, until October, 1871, by express statute, the duty of collecting the taxes devolved upon the sheriff coupled with the requirement that he shall give a separate bond.

The 24th section of the 4th article of constitution of 1817 is : " A sheriff and one or more coroners shall be elected in each county, * * " etc. Section 19, article 4, constitution of 1832 is : " A sheriff and one or more coroners, a treasurer, surveyor, and ranger, shall be elected in each county." * * * In neither of them is either an " assessor " or " collector " named. The constitution of 1869 provides for the election of an " assessor," but is silent as to the " collector." It is plain that if there had been such an office as " tax collector " created by the constitutions of 1817 and 1832, there could not have been such legislation as we have referred to.

A constitution is, according to the American idea, the organization of the government, distributing its powers among bodies of magistracy, and declaring their rights, and the liberties reserved and retained by the people. The constitution provides a class of officers, generally of the ministerial and executive class, with whose names and general functions the people are familiar, without a specification of their duties; thus, sections 20 and 21 of the present constitution: "A state treasurer and auditor of public accounts  *  *  *  shall be elected  *  *  * who shall hold their offices for four years." Manifestly the convention had in view officers whose duties and functions had in general been defined by law, with which the people were familiar, and which were shadowed forth and symbolized by their names. When the people ratified the constitution which declared that they should quadrennially elect an auditor and treasurer of state, and every two years a coroner, sheriff, etc., they distinctly associated the offices with the functions and privileges which before that pertained by law respectively to them. It would be too narrow a view to consider the framers of the constitution as referring alone to those functions incident to the sheriff at common law. For many of the privileges and duties conferred by the common law, and ancient statutes, never belonged to him in this state, and would be wholly unsuited to our society. For instance, he had judicial power, and held an inferior court of civil judicature; he was the king's bailiff, and collected his rents. 1 Bl. Com., 341, 342, 343, side page. Here he retains only his executive character, as at common law, serving the writs of the superior courts, executing the judgments, and attending upon their terms, and as conservator of the peace. These still belong to him, but have been regulated by statute, and others from time to time have been imposed.

We must suppose, when the constitution refers the election of this officer to the people without a word to indicate the nature of his functions, or descriptive of them, other than the name itself imports, it must be implied that it means the sheriff,

with such general attributes and authority as had been there-- tofore connected with the office, and declared in both the. written and unwritten law. We have seen that the law since 1843, as substantially embodied in art. 5, of § 2, ch. 3, of the Code of 1857, was not brought forward in the revision of 1871, but by operation of the 8th section (p. 8) thereof is repealed.

That section makes that revision " have the effect and be: received in use as the statutory laws of a general nature, and shall supersede and repeal all preëxisting statutes of a general nature, the subjects of which are herein revised and consoli- dated." If it shall be held that art. 5, *supra*, of the Code of 1857, has been repealed by the 8th section of the present Code, then it follows, if the collection of taxes does not pertain to the sheriff as an incident of his office, and was so understood and intended by the framers of the constitution, that we have not now, nor have we had since October, 1871, a legal tax col-- lector in the state. The test of whether a former statute has been superseded by the Code of 1871 is whether the subject has been " revised and consolidated." If the subject is legis-- lated upon in the new revision, it must be assumed that those parts of the former law not reënacted are intentionally omitted, and that so much as is retained is the full expression of the legislative will, and that all else is repealed. That is the doc-- trine of the case of the M. & C. R. R. Co. *v.* Weiner, 49 Miss., 738, 739, 740.

The chapter on the public revenue, in the last revision, devotes several articles, commencing with the 8th, to the collection of taxes, the duties and responsibilities of the collectors, so that this subdivision of the larger subject engaged the special thought of the legislature. We cannot evade the conclusion that we must look to the Code for all the law on this subject, that was in force on the 1st October, 1871. The 5th article, *supra*, of the Code of 1857, not having been reënacted in the Code, and being a detail of one of the subdivisions of the sub-- ject revised and consolidated, is not now in force. It would.

follow from this premise that, if the collection of taxes is not incident to the office of sheriff, we have not now, nor have we had since October, 1871, a legal tax collector in the state.

It would be most extraordinary that the legislature should most carefully and minutely provide for the assessment of taxes, and make full regulations for the conduct of the collector, and yet its legislation should be futile and go for naught because the person or officer to make collections was not named. There is no escape from this dilemma upon any other postulate than that the legislative department regarded that duty imposed by the constitution upon the sheriff, and therefore nothing remained for the law-making department but to declare rules and regulations on the subject. Hence we find that continuously since 1869 the sheriffs of the several counties, without challenge or question from any department of government or from the community, have been performing that function. The general revenue law, passed at the first session of the legislature under the present constitution, from pp. 24 to 38, inclusive (pamphlet), makes frequent mention of the tax collector as an existing officer. The 16th section, in part, is: "The bond * * * of the tax collector shall be equal to one-half of the amount of the taxes assessed in the county the preceding year." So the chapter "in relation to public revenue," in the Code of 1871, makes repeated reference to the collector as an officer established in the government. This legislation is meaningless unless it points to the sheriff, charged with that function by the constitution. It is a contemporaneous legislative interpretation that the constitution intended that the sheriff should have the rights, authority, and functions which pertained to him at common law, modified and suited to the condition of society here, and also those general rights and functions which had been imposed by statutes. This legislation made no designation of the person or officer who should collect, because long before the adoption of the constitution that function had been added to the office of sheriff.

A critical examination of the Code unmistakably evinces that, such was the legislative sense. Section 257 devolves the office temporarily, in certain contingencies, on the coroner, "who shall do and perform all the duties, which shall appertain, * * * but the coroner shall not execute the office of tax collector." Sections 1372 and 1685 distinctly assume that the sheriff is tax collector. We are brought to these conclusions: that the framers of the constitution meant that the "sheriff" should exercise the privileges, rights, and func-- tions which the law had devolved upon him, and which he had been accustomed to perform; that the legislature has uniformly, since the adoption of the constitution, recognized the sheriff, as part of his duty, to be tax collector, which recog-- nition has been acted upon by the executive department of the government, and acquiesced in by the community. If this be not so, then the state has been enforcing the collection of her revenues, state and county, by distress and sale, by an officer without legal and constitutional right so to do. These conclusions are supported by authority. The 30th section of the 4th article of the constitution of North Carolina, is like ours. "In each county a sheriff shall be elected, and shall hold * ·* * office for two years." For many years prior to the adoption of the constitution the sheriff had been, under statute, tax collector. In 1871 the legislature authorized the county commissioners of Lincoln county to appoint a tax col-- lector. The appointee of the commissioners ousted the sheriff of that function. The question, in King v. Hunter, 65 N. C., 609, was, had the legislature power to pass the act. It was held that the act violated the constitution, because the sheriff had a property in the office and its functions and emoluments, whereas the act deprived him of the most valuable part of them. Secondly, the act made the office of tax collector appointive, whereas the constitution made it elective. The court refer with approval to the case of Warren v. The People, 2 Denio, 272. There was an office called "clerk of the city and county of New York," who was also "clerk of the court.

of common pleas." The legislature divided the office and conferred upon certain judges of that court the appointment of clerk of the court of common pleas. The court held that there is no power to do this. For if it may be done there is no security for the residue; the legislature may give that to the appointment of some court, and thus the choice by the electors would be defeated. That judgment was affirmed in the court for the correction of errors.

In the State *ex rel.* Kennedy *v.* Brunst, 26 Wis., 412, the point was whether the legislature could take away from the sheriff the county jail, the keeping of which, before that, pertained to his office. The constitution of Wisconsin, like ours, did not define the duties of the office of sheriff, but the court say that the framers of the constitution had reference to the office with those generally recognized legal duties belonging to it when the constitution was adopted. They further hold that the legislature cannot detach from this elective office an important part of its duties and emoluments, and transfer them to another. The court considered the case of State *v.* Den, 5 Charlton (Ga.), 397, which held an adverse doctrine, as unsound. This case is but the opinion of a single judge at *nisi prius.* It is said by Bacon (7th vol., p. 310), that the king may grant the office of sheriff,  *  *  * and although he may determine the office at his pleasure, he cannot do so for a part, *  *  * nor can he abridge the sheriff of anything incident or appurtenant to his office.

2d. The second question is as to the effect of French's failure to give the tax collector's bond. Section 219 is: "If any person elected to the office of sheriff, coroner, treasurer, etc., *  *  * shall fail to give bond on or before the day of the commencement of his term, the election shall be void, and another election ordered." The law from 1843 to 1871 required the sheriff to give two bonds—one as sheriff, the other as tax collector. The 5th article, Code of 1857, p. 71, requires the sheriff to make a bond as tax collector at the same time he gave bond as sheriff. The final clause of the article is: "In

case of failure to qualify as tax collector, within the time allowed for taking the oath and giving bond as sheriff, he shall thereby vacate the office of sheriff, and the vacancy shall be filled according to law.'' As we have seen, this article is repealed by the present Code, and the question is whether, under § 319, the omission to give such bond forfeits the right to the office and makes a vacancy. The terms of this section have reference to the bond required of the sheriff by § 219, and not to any special bond which applies only to a special duty. There is no provision in the last Code, as there was in the revision of 1857, that the office of sheriff shall be vacated by failure to give a tax collector's bond. Such a law is eminently wise and proper, and must have been omitted in the present revision by accident or inadvertence.

It need hardly be said that we are of opinion that the bonds which have been given by sheriffs for the due collection and accounting for taxes, county and state, are valid, and may be enforced, for either nonfeasance or malfeasance. We so held lately in the case of Bryan v. The State, 50 Miss., 688.

The result of the foregoing views is that there is error in the judgment. Wherefore it is reversed, and judgment here overruling the demurrer to the answer, and cause remanded.

Judge TARBELL, not sitting in this case, took no part in the court's opinion.