THE STATE *v.* W. H. HARNEY ET AL.   THE STATE, USE, ETC. *v.* W. H. HARNEY ET AL.

1. TAX COLLECTOR'S BOND. *Validity. State and county taxes.*
   Notwithstanding the omission from the Code of 1871 of the section requiring from the sheriff a tax collector's bond, the provisions of the Code recognizing such bond render it a valid security for State and county taxes, if voluntarily executed. *State* v. *Matthews, ante,* 1, explained. CAMPBELL, J., dissented.

2. SAME. *Liability of sureties. Alteration.*
   The sureties upon a tax collector's bond, imposing on each a several liability for a specific sum, are not bound by an instrument made by a stranger by cutting off their signatures and attaching them to a new bond, which imposes a joint and several liability for the entire penalty.

3. SAME. *Change without altering liability. Sureties' agent.*
   If, however, the sureties entrust the bond to the tax collector for delivery, and he, or a person employed by him, cuts off the signatures, which he attaches to an exact copy of the bond, made because the original is mutilated, they are bound by the new instrument after acceptance by the State.

4. SAME. *Affidavit by sureties. Estoppel.*
   Sureties on the bond who, after its alteration, appear before the chancery clerk, under the act of March 11, 1872 (Acts 1872, p. 30), and sign the affidavit of solvency attached, in which they are described as "sureties on the within bond," are estopped to claim that the paper is not their bond by reason of their ignorance of the change.

5. SAME. *Separate justification. Writing names in affidavit.*
   The rule is inapplicable to sureties who justify upon a separate paper which is not attached to the bond when the affidavit is made by the others; but it applies to those who write their names in the affidavit after the change in the bond.

6. TAX COLLECTOR'S BOND. *Duress. Threatened suit.*

The fact that the sheriff, who has executed a sheriff's bond, is induced to give the tax collector's bond by the board of supervisors threatening to proceed to have the office declared vacant unless he does so, is not such duress as renders the collector's bond a nullity.

7. SAME. *County taxes. Illegal levy. Money actually collected.*

Want of power in the tax collector to collect the taxes, by reason of the fact that the levy was not made at the county town (*Johnson* v. *Futch, ante,* 73), is no defence to a suit on the bond by the county for the money actually collected by him.

WRITS of error to the Circuit Court of Hinds County.

Hon. S. S. CALHOON, Judge.

These suits, upon the same bond, one for State and the other for county taxes, were conducted in the lower court and submitted in the Supreme Court together.

*T. J. & F. A. R. Wharton,* for the plaintiff in error.

1. Former decisions of this court erroneously hold that Code 1857, p. 71, art. 5, requiring a tax collector's bond, is repealed by Code 1871, § 8. Although there are as many provisions in the latter as in the former Code, as to the duties of the tax collector and suits on his bond, and, although Code 1871, § 1372, requires a copy of the assessment roll to be certified to the sheriff, yet this Code does not declare who shall be tax collector, or the bond he shall give as such, except that § 1376 requires him to give a bond for the collection of special taxes for county purposes. The former law was therefore not repealed by Code 1871, because the subject-matter was not revised and consolidated. The provisions of the latter Code, and subsequent statutes prior to the act of March 18, 1876 (Acts 1876, p. 8), indicate that the several legislatures so considered. The decisions of this court, including that of *State* v. *Matthews, ante,* 1, recognize the fact that from 1871 to 1876 sheriffs were authorized to collect taxes, and that such authority was not derived from the common law. It follows that it was conferred by the statutes in force when the Code of 1871 became operative. The fact that the tax collector is mentioned as a distinct officer in the Constitution of 1817, art. 4, § 17 (Hutch. Code, p. 30) abolishes the right of sheriffs to collect taxes under the common law, if it ever existed. An examination of the statutes of 1843,

1844, and 1846, cited in *French* v. *State*, 52 Miss. 759, and of 1822, 1833, and 1837 (Hutch. Code, 171, 174 *et seq.*), will show (1) that, to the time when the Code of 1871 took effect, the office of tax collector was a distinct office, even when its duties were performed in connection with the office of assessor of taxes, or of sheriff; (2) that no one was authorized to perform the duty of collecting State or county taxes until he had executed bond with good sureties; (3) that the act of 1846, § 32 (Hutch. Code, 191), in force when the Code of 1857 was adopted, and which is similar to art. 5, p. 71, thereof, provided that sheriffs should be tax collectors, and that, in addition to the sheriff's bond they should " give another bond for the collection of taxes." In previous rulings the court was embarrassed by the supposed dilemma that if Code 1857, art. 5, was repealed by Code 1871, § 8, it would follow that unless the collection of taxes pertained to the sheriff, as an incident of his office, there has not been, since October, 1871, a legal tax collector in this State. But by no authority, except the State Constitution or statutes, did the collection of taxes so pertain to the office of sheriff.

2. If the authority to collect taxes is vested in the sheriff by the Constitution or statutes of the State, and not by the common law, it results that he must conform to the provisions of the law conferring that authority, one of which is that he shall give a separate bond. In *French* v. *State*, reference is made to the understanding and intention of the people who ratified the Constitution of 1869, and to " a contemporaneous legislative interpretation that the Constitution intended that the sheriff should have the rights, authority and functions which pertained to him at common law, modified and suited to the conditions of society here." By a parity of reasoning we ascertain the intent of the legislature which adopted the Code of 1871 as to the officer to collect State and county taxes, and the security to be given by him therefor. We assume that the legislature and the codifiers intended that such taxes should be collected after the Code of 1871 should take effect. An examination of the chapters of the Codes of 1857 and 1871 on the subjects of Public Revenue and of the

Office and Duties of Sheriffs shows that most of the provisions of the former Code, on those subjects, are reprinted in the latter. It is unreasonable to suppose that it was the intention of the codifiers, of the judges of the Supreme Court who examined the Code, and of the legislature which adopted it, to diminish the security required by previous statutes for the collection and payment of taxes. In *Harris* v. *State*, 55 Miss. 50, it was said, " A careful perusal of chapter 22 of the Code clearly indicates the legislative will that the sheriffs, as tax collectors, shall give bonds." That decision was approved in *James* v. *State*, 55 Miss. 57. The bond in *Harris* v. *State*, was exactly like the one given by Harney. The suit in *James* v. *State* was for county taxes collected and not paid over. The defence was that it was a voluntary bond, not required by law, as James gave a sheriff's bond, which was then, and had been in force during his term ; and this was held to be untenable.

3. Even if there were no statute requiring Harney to give the bond in these suits before he was authorized to collect the taxes of the State and county, still unless it violated or was in conflict with, some statute, it would constitute a contract binding between him and his sureties and the State to secure payment by him of money collected as taxes, due either to the State or county. It was so expressly held in *State* v. *Cooper*, 53 Miss. 615, on the authority of the opinion of Chief Justice Marshall in *United States* v. *Maurice*, 2 Brock. 96, and of Story, J., in *United States* v. *Tingey*, 5 Peters, 115. It results from the rule declared that the board of supervisors was authorized, unless forbidden by some statute, to require a bond of the character of that sued on as the condition upon which Harney would be permitted to exercise the duties of tax collector of Hinds County. That rule is fatal to the following matters set up as defences: viz., (1) that such bond is without any valid consideration to support it ; (2) that it is void as a voluntary bond ; (3) that it was coerced from the defendants in error by threat of the board of supervisors to declare the office of sheriff of Hinds County vacant unless such bond was given. The cases cited as decided by this court hold that it was as much the duty of the sheriff, after, as before,

the adoption of the Code of 1871, to collect State and. county taxes. It follows that the defendants in error are estopped, by the recitals in the bond sued on, from denying that Harney was authorized as tax collector to collect the taxes claimed in these suits, or from denying their liability as his sureties for default by him in the payment of taxes so collected. Even in *State* v. *Matthews, ubi supra,* supposed to be in conflict with the above rule, it was conceded that such bond is valid security for payment by a sheriff of-taxes collected for county purposes, if accepted for the State and county at any time before the office of sheriff and tax collector shall have been declared vacant.

4. It is no defence to the suit for the county taxes that they were levied by the board of supervisors sitting in Jackson, instead of in Raymond. That objection would avail to defeat the title of a purchaser of lands at a sale made under that levy. *Johnson* v. *Futch, ante,* 73. Before it could prevail as a defence to the tax collector and the sureties on his bond for not paying over money collected by him for taxes to Hinds County, they must show that such county taxes were not only illegally levied, but were not legally due to the county. By bringing the suit the county elected to look to the tax collector, and the sureties on his bond, for recovery of the money received for taxes. That operates in law a discharge of the tax-payers, and if the suit is defeated Harney will defraud the county of the large amounts collected by him.

5. The court below erred in overruling demurrers to the pleas which allege that the bond, after its execution, was altered by Taylor, without the knowledge or consent of the defendants in error. It also erred in sustaining the demurrers to the replications of the plaintiff in error. If any alteration was made in the bond, neither the State nor Hinds County can be prejudiced. No agent of theirs had any thing to do with it. The person to whom the obligors intrusted the bond after they signed it was their agent, to have it approved by the clerk of the Chancery Court. If approved by him, without knowledge of the change, a recovery by the State and county in these suits should not be defeated. *Graves* v. *Tucker,* 10 S. & M. 9; *Clopton* v. *Elkin,* 49 Miss. 95;

*Everman* v. *Robb*, 52 Miss. 653. To avoid the bond as to the sureties, the alteration must be a material one, made after it was executed and delivered, and by some one claiming under it. If done by a stranger, or one of the obligors, and without the knowledge or privity of the holder, the latter will not be affected. *Nichols* v. *Johnson*, 10 Conn. 192; *Medlin* v. *Platte County*, 8 Mo. 235; *Raper* v. *Birkbeck*, 15 East, 17; *Bridges* v. *Winters*, 42 Miss. 135. The change is shown by the replications to have consisted simply in converting printed into the same written words, which is not an alteration. The defendants in error are estopped to set up the alleged alteration by their affidavit made before the clerk of the Chancery Court when the bond was presented to, and approved by him, whether the change was in a material particular or not. They must be liable for the consequences of having misled the clerk, who was the agent of the State to approve the bond. Not one of the pleas alleges that any alteration was made in the bond after its approval and acceptance.

*T. J. Wharton* and *F. A. R. Wharton*, on the same side, each argued orally.

*Nugent & McWillie*, for the defendants in error.

1. It is admitted that, after the bond was signed, it was mutilated, as pleaded. Nothing was left of it but the signatures and affidavit as they stood annexed to the original bond. With these the sheriff constructed a new bond by the aid of paper and mucilage. An alteration of a bond, to be binding on the obligors, must be made before or at the time of signing, which is considered a re-execution. If the consent be given after, it will not repel the plea of *non est factum*. Alterations and interlineations of a material character in all instruments under seal make them absolutely void as to parties who have not consented previously or at the time. The bond cannot be rendered valid by a subsequent assent. *Cleaton* v. *Chambliss*, 6 Rand. 86; *Ex parte Decker*, 6 Cowen, 59; *Sans* v. *People*, 3 Gilman, 327; *Oneale* v. *Long*, 4 Cranch, 60; *Warring* v. *Williams*, 8 Pick. 322; *Morris* v. *Vanderen*, 1 Dallas, 67. A paper signed and sealed in blank, with verbal authority to fill it up, which is afterwards done, is void as to the party so signing, unless he afterwards delivers it, or acknowl-

edges and adopts it.  A signature in blank does not authorize
any thing beyond a simple contract.  *Warring* v. *Williams*, 8
Pick. 322 ; *Gilbert* v. *Anthony*, 1 Yerger, 69 ; *Byers* v. *McClan-
ahan*, 6 Gill & J. 250 ; *Boyd* v. *Boyd*, 2 Nott & McCord, 125 ;
*Perminter* v. *M'Daniel*, 1 Hill (S. C.), 267 ; *Sans* v. *People*,
3 Gilman, 327.

2. The replications to these pleas of alteration are not suffi-
cient.  It is not averred that the parties signing the affidavit
had notice that the bond had been mutilated, and that they
were signing a different obligation.  To apply the estoppel to
them in such case would go beyond any rule of law or prin-
ciple of justice.  Estoppel arises from an act or declaration
of a person, calculated to mislead another, on which the latter
has relied, and has so acted or refrained from acting, that
injury will befall him if the truth of the act or declaration
be denied.  *Staton* v. *Bryant*, 55 Miss. 272 ; *Cowles* v. *Bacon*,
21 Conn. 451 ; *Stone* v. *Britton*, 22 Ala. 543 ; *Niantic Bank* v.
*Dennis*, 37 Ill. 381 ; *Williams* v. *Jackson*, 28 Ind. 334 ; *Quirk*
v. *Thomas*, 6 Mich. 76.  No one is estopped by an admission
made in ignorance of his right, induced by an innocent mistake
of material facts.  *Thrall* v. *Lathrop*, 30 Vt. 307.  As was said in
the case of *Dorlarque* v. *Cress*, 71 Ill. 380, the doctrine of equi-
table estoppel is based upon a fraudulent purpose and a fraudu-
lent result, and if the element of fraud is wanting there can be
no estoppel.  *Brant* v. *Virginia Coal Co.*, 93 U. S. 326.  The
replications admit that the alteration was not known to the
sureties when they signed the affidavit, and undertake to
charge them without any allegations of negligence.  This is
not the law.  Nothing short of the most culpable act of
negligence could supply the want of actual knowledge.  *Boggs*
v. *Merced Mining Co.*, 14 Cal. 279 ; *Preston* v. *Mann*, 25 Conn.
118 ; *McCune* v. *McMichael*, 29 Ga. 312 ; *Copeland* v. *Cope-
land*, 28 Maine, 525 ; *Shaw* v. *Beebe*, 35 Vt. 205 ; *Common-
wealth* v. *Moltz*, 10 Penn. St. 527.

3. A voluntary bond does not bind the obligors.  Such
a bond, given by a public officer, conditioned for the due
performance of his duties, is nugatory.  But a bond simi-
larly conditioned, if required by statute, would be a con-
dition precedent to entering into office, and, if not duly

executed according to the statute, would be a valid obligation at common law.   *State* v. *Bartlett*, 30 Miss. 624; *Goodrum* v. *Carroll*, 2 Humph. 490 ; *Freeman* v. *Davis*, 7 Mass. 200 ; *Nunnery* v. *Cotton*, 1 Hawks, 222 ; *Mills* v. *Starr*, 2 Bailey, 359 ; *Newell* v. *Mayberry*, 3 Leigh, 250 ; *Perry* v. *Corwithe*, 18 Johns. 499; *Collard* v. *Groom*, 2 J. J. Marsh. 487.   To give validity to the bond of a public officer, even as a common-law obligation, it must have been required by some statute.   *Commonwealth* v. *Jackson*, 1 Leigh, 485.   Since the decision of this court in *French* v. *State*, 52 Miss. 759, the question arising here was never doubtful, although complicated by several subsequent decisions.   The sheriffs of the several counties in this State are *ex officio* tax collectors by force of the Constitution itself, as decided in *French* v. *State*.   The duty of collecting the State and county taxes is devolved upon them by operation of law, and as decided in *State* v. *Matthews*, *ante*, 1, the bonds, given by them as sheriffs, are a security for the faithful discharge of duty as tax collectors for the State and county.   That was their legal scope, and the intention of the obligors in the sheriff's bond could not affect it.   Code 1871, § 219, requires the sheriff to give bond for the payment of all moneys collected by virtue of his office, and the faithful discharge of all the duties pertaining to the office ; and gives the board of supervisors the power to increase the penalty of the bond to thirty thousand dollars.   But, as it might happen that a special tax might be levied by the supervisors of any county for county purposes, Code 1871, § 1376, provides that a special bond may be required for the faithful collection and payment of the same.   Hence the court said, in *State* v. *Matthews*, that, " as it might be true that the board had failed to exercise its right to require such bond because of the giving of the tax collector's bond sued on, under which the taxes levied by the board of supervisors had been collected, it was proper to regard the bond as having sufficient consideration to uphold it, as a security for county taxes."   Even as thus explained, the decision in *Harris* v. *State*, 55 Miss. 50, may well be questioned to the extent stated. " Special taxes for county purposes " are one thing, and

" county taxes " generally, or those provided by law for the ordinary government of a county, are quite a different thing. The distinction is clearly drawn by the statute. In the one case the sheriff's bond stands as adequate security, in the other it does not.

4. The bond framed by Harney, it is pleaded, was exacted by the board of supervisors under the Code of 1857, which required sheriffs to give special bonds as tax collectors, upon the idea that the provisions of that Code were in effect, and a threat that if it was not given, the board would have Harney ousted. But for this exaction and threat it would not have been given. There is no room for construction or presumption. The bond was unlawfully exacted, and was given under duress. It is clear, therefore, that it is a nullity, and cannot be sustained for the reason assigned in the case of *Harris* v. *State, ubi supra. Whitefield* v. *Longfellow*, 13 Maine, 146 ; *Baker* v. *Morton*, 12 Wall. 150 ; *Matthews* v. *Lee*, 25 Miss. 417 ; *Commonwealth* v. *Jackson*, 1 Leigh, 485.

5. A bond to be binding on the obligors must be delivered ; it is not an executed contract until that is done. There can be no such thing as delivery to the State, considered either in respect to its territory or the aggregated people constituting the body politic. There must be some one appointed by law to receive the bond for and on behalf of the State or the county. If there be no such person so appointed, and no bond required by law, there can be no such thing as the execution or delivery of the bond, and hence no contract. The mere bringing of the suit could have no retroactive effect. If there were no law calling for the bond and appointing some one to receive it, it could not be a statutory bond. It could not be a common-law obligation, because a consideration and delivery are indispensably necessary to such a contract.

6. It is also pleaded that no county taxes were levied, the levy of taxes made by the board of supervisors at Jackson being a nullity. The point has been decided in our favor by this court. *Johnson* v. *Futch, ante,* 73. There were no county taxes collected by Harney. Before a collector can collect county taxes he must be supplied with a copy of the assessment roll, and a copy of a valid order of the board of super-

visors levying the rate per cent upon the persons and property subject to State taxes, according to the assessment of the particular year. These county taxes must be levied at the time and place appointed by law, or they are void. *Moore* v. *Foote*, 32 Miss. 469 ; *Shewalter* v. *Brown*, 35 Miss. 423 ; *McGehee* v. *Martin*, 53 Miss. 519 ; *Tupelo* v. *Beard*, 56 Miss. 532 ; *Board of Supervisors* v. *Klein*, 51 Miss. 807 ; *Dogan* v. *Griffin*, 51 Miss. 782 ; *Gamble* v. *Witty*, 55 Miss. 26. A tax collector is not protected in the execution of process, though regular on its face, if he has knowledge of the facts which render it void. *Leachman* v. *Dougherty*, 81 Ill. 324. The order of the board given to Harney showed on its face that it was made at Jackson. It is settled law in this State that when the levy of a tax is illegal and void, the taxpayer can recover back what he has paid from the collector while the money remains in his hands, and from the county if he has paid the money over. *Leonard* v. *Canton*, 35 Miss. 189 ; *Tuttle* v. *Everett*, 51 Miss. 27. But it is urged that the money was paid to Harney, and that his sureties must answer for it to the county. If the above authorities are to be relied upon, no such result would follow. What right has the county to the money ? If Harney collected the money without authority of law, he alone is responsible for that illegal act, and his sureties are not liable. *Wood* v. *Stirman*, 37 Texas, 584. If the county were allowed to recover the money, it would only be to pay it to those from whom it had been unlawfully exacted. But the right to the money must be a legal right, and not an equitable claim. If there is no legal title or right to the fund there can be no recovery. The obligation of the sureties is to answer for the lawful taxes collected, and not for moneys illegally exacted ; nor for trespasses committed by the collector. It is insisted, however, that the collector is estopped to set up the illegality and invalidity of the order, when, under color of it, he has collected taxes, and that his sureties are equally estopped ; but this proposition is contrary to our own decisions. The moneys in Harney's hands belonged to the individual taxpayers, and were in no sense taxes due the county. *Whitfield* v. *Wooldridge*, 23 Miss. 183.

*W. L. Nugent,* on the same side, argued orally.

*M. Green,* on the same side.

1. The bond never had legal existence as a contract. Pasting signatures and seals upon a bond with a different penalty and condition, without the knowledge or authority of the signers, was a forgery and imposed no liability. The affidavit alleged to be an adoption of the forgery is insufficient, because it is not alleged that the affiants knew of the forgery. There was no *consensio mentium.* The affidavit is no estoppel. (1) The affiants did not declare that they were "sureties on the within bond." These words are the recital of the officer. The only declaration made by the affiants was as to the value of their property. The affiants are not estopped to contradict the personal description made by the officer. (2) It is no part of the officer's duty, in administering the oath, to judicially determine and certify whether the affiant is a surety or not. The officer approving determines this fact. (3) All these elements must concur: a representation made with knowledge of the facts to a party ignorant of the truth, with intent that he shall act upon it, and he must be induced to act upon it. Bigelow on Estoppel, 494 *et seq.* The affiants did not represent that they had signed the "within bond "; it is admitted that they did not so state with knowledge of the facts. The affidavit differs from an acknowledgment in this: that the affiant is not then called upon to affirm or disaffirm the deed. (4) The affidavit is no part of the bond. Acts 1872, p. 30. (5) Nor is estoppel created by ignorance of the fact of forgery *Graves* v. *Tucker,* 10 S. & M. 9, is not in point. Every holder of forged paper is innocent.

2. The levy of taxes was illegal and void, because the board of supervisors had no power to levy taxes at Jackson. *Johnson* v. *Futch, ante,* 73. The sheriff is liable to the tax-payer for the amount paid. *McNutt* v. *Lancaster,* 9 S. & M. 570; *Coulson* v. *Harris,* 43 Miss. 728; *Tuttle* v. *Everett,* 51 Miss. 27. He could not be liable to both the tax-payer and the county. Illegality, not irregularity, of assessment is a defence. *Foxcroft* v. *Nevens,* 4 Greenl. 72; *Crutchfield* v. *Wood,* 16 Ala. 702; *County of Lewis* v. *Tate,* 10 Mo. 650; *Downing* v. *Roberts,* 21 Vt. 441; *McNutt* v. *Lancaster,* 9 S. & M. 570;

*Nares* v. *Rowles*, 14 East, 510. Sureties are liable to the tax-payer on void assessment. *State* v. *Shacklett*, 37 Mo. 280. It is said that, if the warrant is regular on its face, and the court issuing it has jurisdiction, the collector is not a trespasser and must pay the county; otherwise he must pay the tax-payer. Cooley on Torts, 460, 559; Blackwell on Tax Titles, 176, 187; *Bradley* v. *Ward*, 58 N. Y. 401; *Erskine* v. *Hohnbach*, 14 Wall. 613; Burroughs on Taxation, § 108. Here the warrant or writ showed on its face want of jurisdiction. The county has no title, and cannot recover by proving that the defendant has none. The condition is to pay over " all moneys collected by him, and to which said treasuries shall be respectively entitled." Under this, the defendants can show that the county is not entitled to the money. Under the statute, it was held that the declaration must aver that the taxes were legally assessed. *Whitfield* v. *Wooldridge*, 23 Miss. 183. This judicial construction prior to the Code of 1857 is conclusively presumed to be the legislative intent in its re-enactment.

3. Is a purely voluntary bond valid? If so, is a voluntary bond, not voluntarily given, valid? No law required this bond. *French* v. *State*, 52 Miss. 759. A voluntary bond is void. *State* v. *Bartlett*, 30 Miss. 624. Subsequent cases do not overrule this case. In *Byrne* v. *State*, 50 Miss. 688, it was held that an acting sheriff cannot defeat recovery by the plea that he is not sheriff. In *French* v. *State*, 52 Miss. 759, it is said that, though no law requires a bond, it is valid, if given, and *Byrne* v. *State*, *ubi supra*, is cited, which does not so hold. In *Harris* v. *State*, 55 Miss. 50, it is said that the above statement in *French* v. *State* was a *dictum*. In *Harris* v. *State*, the court did not seem to consider a voluntary bond involved, as afterwards shown by reasons stated in *State* v. *Matthews*. The basis of the former decision and other cases holding a tax collector's bond liable, is that, under a certain exigency, bonds could be required under Code 1871, § 1376, and this court would presume, in the absence of proof, that there was a consideration. Every presumption was in favor of the consideration of a sealed instrument, and, in the absence of proof, this presumption would be indulged.

Here all presumptions are repelled by the allegations of the plea. A voluntary bond, not voluntarily given, is void. *United States* v. *Tingey*, 5 Peters, 115.

GEORGE, C. J., delivered the opinion of the court in the case of the State taxes.

At the general election, in November, 1873, W. H. Harney was elected sheriff of Hinds County for the constitutional term commencing on the first Monday in January, 1874. He executed an official bond as sheriff, as required by law, and afterwards, on January 28, 1874, executed, or attempted to execute, a bond as tax collector, which was accepted and approved by the chancery clerk of the county. This is an action on this last bond against Harney and his sureties for a balance of unpaid taxes due the State collected by Harney during his term of office. The pleadings are very confused and complicated, arising, in great part, from the unnecessary separation of the several defendants, of whom there were eleven, in the pleas and rejoinders and demurrers; and from the further fact that matters of defence, which could have been made under the plea of *non est factum*, sworn to, were set out specially, requiring special replications to answer them. We shall not notice in detail these voluminous pleadings, extending over two hundred pages, but, at the request of counsel, proceed to decide the points of law necessary to a final determination of the case.

It is first objected that the bond sued on, if legally executed, which is denied, is nevertheless a voluntary bond without consideration, and therefore not binding on the obligors. This objection is based on the omission in the Code of 1871 to require any other bond from a sheriff than his official bond provided for in § 219. It is claimed that the bond required in that section is the only bond which the sheriff was required or even authorized to make, and, that being liable on this bond for taxes collected by him for the State, as was decided in *State* v. *Matthews*, *ante*, 1, he is not liable, nor are his sureties, on the bond executed specially in his character as tax collector. This position cannot be maintained without overruling at least six cases decided by this court with reference to

tax collectors' bonds taken under the Code of 1871. In *Byrne*
v. *State*, 50 Miss. 688, a sheriff and his sureties on a tax col-
lector's bond executed by him under the Code of 1871, were
held liable for the State taxes collected and not accounted for
by him.   The same conclusion was reached, as to county taxes,
in *Taylor* v. *State*, 51 Miss. 79.   In *Lewenthall* v. *State*, 51 Miss.
645, the validity of a sheriff's bond as tax collector was also
fully recognized, and such a bond was held to be an official
bond from which the sureties could get relief, as in other cases
of official bonds, under Code 1871, §§ 315, 316.   In *French*
v. *State*, 52 Miss. 759, the court held that, under the Code of
1871, the failure of the sheriff to give a tax collector's bond
was not a cause of forfeiture of his office under § 319 of the
Code, and in the same case held that tax collectors' bonds
were valid, both for State and county taxes, and cited and
reaffirmed *Byrne* v. *State*, *ubi supra*.   In *French* v. *State*, 53
Miss. 651, an action on a tax collector's bond given under the
Code of 1871 was defeated, upon the ground that it was
unlawfully instituted, both the court and the counsel recog-
nizing its validity.   The next case in which the validity of
these bonds was contested in this court is *Harris* v. *State*, 55
Miss. 50.   In this case, the county of Rankin sued on the tax
collector's bond for a balance of county taxes not accounted
for.   The sheriff's term commenced on the first Monday in
January, 1874, and the bond was dated Oct. 17 follow-
ing.   It was objected to the action that the bond was given
too late, and was moreover voluntary, there being no law
authorizing or requiring it.   The court said: "A careful
perusal of chapter 22 of the Code clearly indicates the legis-
lative will that the sheriffs, as tax collectors, shall give bonds.
Thus § 1725 directs suit on the tax collector's bond for a
failure to pay into the State and county treasuries the taxes
collected by them.   So § 1752 directs suit to be brought on
the collector's bond, against principal and sureties, for a fail-
ure or omission to collect the taxes.   Whilst there is a clear
expression that bonds must be given for the good conduct of
the officer, the Code is silent as to the time and the penalty.
All other particulars are provided for. . . . It is impossible
to say that, within the purview and intendment of such legis-

lation as this, it was illegal for Shelton [the sheriff] to have executed the bond; and that the State, having participated in the illegal transaction, cannot maintain an action upon it. Unmistakably the allusion in the statute was to the bond for the indemnity of the State and county. Shelton and his sureties so understood it; so did those appointed by law to accept and approve it. It was so understood and acted upon throughout the State." The court then proceeded: " Great strength is given to these views by § 1376, which provides that, when a special tax may be levied for county purposes, the board of supervisors may require the collector to give bond for the faithful collection and payment of the same." In *James* v. *State*, 55 Miss. 57, this case is cited and confirmed. In *State* v. *Matthews*, *ante*, 1, which is erroneously supposed to give countenance to the idea that tax collectors' bonds are invalid, it is said with reference to *Harris* v. *State:* " It is true, as stated in the opinion in that case, that there is abundant evidence in the Code of the legislative assumption of the fact that there was a tax collector's bond, but there is no requirement by the Code that a tax collector's bond should be given, except in the state of case provided for by § 1376." We are asked now to disregard all these cases containing express adjudications in some, and a clear recognition in the others, of the legality of tax collectors' bonds, because there is no requirement of them in the Code of 1871. In five of the above cases the validity of the tax collectors' bonds is recognized, although it is admitted that there is no provision in the Code of 1871 requiring their execution. We might well rest on the authority of these decisions of this court in favor of the validity of these bonds and on the maxim *stare decisis*. But, as they are assailed with great earnestness and ability, we will proceed to state the reasons which place their validity beyond successful impeachment.

It has been shown, in the quotations we have made from *Harris* v. *State* and *State* v. *Matthews*, that there is a plain recognition in the Code of tax collectors' bonds for the security of State and county taxes, notwithstanding there is no positive requirement for their execution. But that such bonds may be given, and that suits on them are directed to be instituted

to recover defalcations in State and county taxes, are undeniably plain provisions in the Code. The only difference, in the provisions of the Code, between them and other official bonds is that there is no provision fixing their penalty and time of execution, and no forfeiture of office imposed on the sheriff for a failure to execute them. Whether the failure to make these provisions was the result of oversight or design, cannot affect the force and validity of the enactments in the Code to which we have referred. These enactments are insufficient to compel the execution of these bonds as a condition precedent to the enjoyment of the office of sheriff and tax collector, but they are ample to validate them when voluntarily executed. They refer to legal and valid, not to invalid, bonds. Certainly the legislature did not direct suits to be brought on invalid bonds; and certainly the recognition by the legislature of such bonds as proper makes them legal; and, if such bonds are legal whose execution, acceptance and enforcement are recognized by law, they cannot be invalid. There is no other test of the validity of a contract, except that it is in accordance with law. What the law commands or permits, as in accordance with its behests, cannot be invalid. Tax collectors' bonds, executed under the Code of 1871, can stand this test, and must be treated, when given, as valid and obligatory contracts, unless we impute to the action of the legislature the absurd and contradictory effect of recognizing as good that which is invalid, only for the want of such recognition, and, unless we further impute to the legislature the folly of directing a suit to be brought on an instrument which must be held invalid for want only of the legislative sanction to its execution. These truths are so plain and self-evident that the validity of tax collectors' bonds would be at once acknowledged, but for an idea, growing out of *State* v. *Bartlett,* 30 Miss. 624, that the sole consideration of an official bond is that it is required to be executed as a condition precedent to the enjoyment of the office, and that without such consideration it is void. But it is well settled that an official bond, which may be lawfully taken, — that is, taken without violating law, though not required by law to be executed, — if voluntarily entered into, is valid. *United*

*States* v. *Tingey*, 5 Peters, 115; *Sooy* v. *State*, 38 N. J. 324, and authorities there cited. These cases hold that the actual enjoyment of the emoluments of the office is a sufficient consideration for supporting the bond, and that it is not essential to a valid consideration to support it, that it should be required by law. But if such a bond was without a valuable consideration, it would not follow that it would not be good when executed under the Code of 1871. That a consideration is necessary to support a contract results alone from a rule of law requiring it; and hence, as it has been shown that the Code of 1871 recognizes a tax collector's bond as valid and enforceable, if it be regarded as without consideration, then the Code validates the bond, though without consideration. The existence of valid contracts without a valuable consideration is not unknown either to the common or the civil law. In the latter, a species of contract consummated with certain formalities, and denominated a "stipulation," is valid without a valuable consideration; and in the common law, from the earliest period, the obligor in a sealed instrument was estopped to say that it was without consideration, which is the same thing as saying that a consideration is not necessary to support it. And this is the view stated in 1 Chitty on Contracts, 6, and by Lord Denman in *Cooch* v. *Goodman*, 2 Q. B. 580, 599. But for a statute in this State, bonds would be unimpeachable for want of consideration, and by a provision in the same Code in which this enactment is found, tax collectors' bonds are recognized as valid; and if they are to be considered as without consideration, they are by the Code made valid, as at common law, without it. Clearly, a requisite to the validity of a contract introduced by statute, may also be dispensed with by statute.

But it is urged that, as in *State* v. *Matthews*, *ante* 1, it was held that the sureties on the sheriff's bond were liable for his failure to pay over State taxes collected by him, it was also necessarily held that they were not liable on his tax collector's bond. Such is not the effect of that decision. It has been seen that the result of the decisions in this court supporting the opinion in that case, is that the Code of 1871, recognized the existence and validity of tax collectors' bonds, but that there was no provision in the Code by which the execution of such

bonds by sheriffs could be enforced. The execution of a sheriff's bond alone could be enforced by a forfeiture of the office in case it was not given. Since, then, as was held in *French* v. *State*, the tax collector's duties were inseparably incident to the sheriff's office, and were a part of the sheriff's official trust, it would follow, as held in *State* v. *Matthews*, that any failure of the sheriff to discharge any of his official duties with respect to taxes, would be a breach of his official bond, which required him faithfully to perform and discharge all the duties of the office of sheriff and all acts and things required by law, or incident to said office. This was the only bond which was required by law of the sheriff, the only one to secure the due execution of which any provision was made. It would follow that, in case no tax collector's bond was executed, there would be no security for the collection of the public revenue unless the sheriff's bond was a security. It was impossible, therefore, to resist the conclusion reached in *State* v. *Matthews*, that the sheriff's bond was a security for the collection of the taxes. No other security was with certainty provided, and the discharge of the duties of tax collecting was also plainly within the conditions of the sheriff's bond. Such being the law, it was rightly held in that case that the execution of a tax collector's bond did not narrow the scope of the sheriff's bond. Any other ruling would have left the scope and obligation of the sheriff's bond to be determined, not by law and the terms of the bond itself, but by the performance or non-performance of an act by the sheriff which he might or might not perform at his will. Being thus liable on his official bond for the collection and paying over of the taxes, and it being also well settled that a tax collector's bond, if given, would be lawful and obligatory, no other result can be reached than that the tax collector's bond is a cumulative security for the collection and paying over of taxes, and that the State or county has a remedy on either or both. What may be the respective rights of the sureties on these bonds as to contribution is not before us. The conclusion we have reached, as will be seen from the reasoning on which it is based, applies only to bonds executed under the law as it stood in the Code of 1871. The subsequent enactment,

in 1876, of a statute requiring sheriffs to give tax collectors' bonds, as a condition to entering upon their offices, has the effect to confine remedies for acts and omissions which would be breaches of such bonds to the obligors therein.

We will now proceed to determine the questions raised in relation to the execution of the bond. It is alleged on the part of the obligors that they executed a tax collector's bond for Harney, in which each obligor was separately bound for a specified amount, the aggregate of the several amounts equalling the penalty of the bond; and that, after they had executed it in this way, one Taylor, who was to be appointed a deputy sheriff by Harney, cut off the signatures of the obligors and attached them to the paper which constitutes the bond sued on, which is joint as well as several, and that this was done without their knowledge or consent; and that they never knew of this until this action was brought. We do not doubt that these facts alone constitute a good defence to the action, and made the bond sued on not the bond of the obligors. To obviate the effect of this, it is replied by the State (1) that the bond cut off from the signatures by Taylor had become mutilated and almost illegible, that for this reason it was copied *verbatim* and the copy attached to the signatures, and that the bond as it now appears is exactly the same in all respects as the bond executed by the parties; (2) that all the defendants except two, after the change was made by Taylor, made a joint affidavit, which was indorsed on the bond, as it was constituted by the change. This affidavit was substantially as follows: " Personally appeared before me, M. Peyton, Clerk of the Chancery Court of Hinds County, John H. Odeneal and [naming the others], sureties on the within bond, who each, being duly sworn, declared on oath that they are worth in freehold estate over and above all their just debts and liabilities and legal exemptions, property in this State, subject to execution at law, to wit [then follow the names and seals of each of the obligors with a sum in figures opposite his name, to represent the value of his property]. Sworn to and subscribed before me this 28th day of January, A. D. 1874. Signed, Murray Peyton, Clerk." This bond was also accepted

and approved on the day this affidavit was made. It is insisted that the replications setting up these facts are not good answers to the pleas above set out, because they do not aver that the affiants knew of the change in the bond when they made the affidavit. But we do not consider this a just view. By the act of March 11, 1872 (Acts 1872, p. 30), the chancery clerks were required in all cases to take the written examination, under oath, of sureties on official bonds approved by them, and to record these examinations with the bonds in their offices. They were not allowed to approve a bond without such examination as to the solvency of the sureties, and hence such examination became a condition precedent to such approval. When therefore sureties came before a chancery clerk and made an oath indorsed on the bond, in which it was recited that they were "sureties on the within bond," it must be regarded as a solemn affirmation on their part of their suretyship, and a request by them to the clerk to accept and approve the bond in the condition it then was as their act and deed. They cannot in such a case be permitted to aver that the paper on which such affidavit is indorsed, in the condition that it then was, is not their bond by reason of their ignorance of any alteration or change in the bond. They are conclusively presumed to know all that appears on the face of the paper, and to have assented to it in its then condition. Any other rule would leave the door wide open for the perpetration of fraud on the State, and render the security of official bonds precarious in the extreme. Support for this view will be found in *New Orleans Railroad Co.* v. *Burke*, 53 Miss. 200. As to the other two sureties, Bruce and Hill, it does not clearly appear from the replication whether or not the separate paper on which they justified as sureties was attached to the bond at the time the affidavit was made. If it was not so attached, the above rule would not apply to them, unless their names appearing in the affidavit made by the other sureties were written by themselves after the change in the bond was made. In that case, their signatures, so written in the affidavit, would have the same effect as the affidavit has as to the other affiants. Of course, if it could be shown that they had knowledge of the change in the bond at the time they made the

affidavit, or consented to the change, they would be concluded.

We regard also the first matter of replication, above set out, as a good answer to the pleas. The cutting off of the signatures from the first bond and the attaching of an exact copy in its stead was not the act of the State. It was the act of a person into whose hands it came before it reached the chancery clerk for acceptance and approval. As the obligors did not, after signing and sealing the bond, undertake to deliver the bond themselves, they must be considered as intrusting it to Harney to cause delivery to be made. They thus gave an agency to Harney in relation to the delivery. An act done therefore by Harney, or any person whom he should engage to make the delivery, if wholly immaterial to the obligors, not enlarging their liabilities, nor injuring them in the least, should be considered as the act of the obligors, and binding on them.

It is next pleaded against the validity of the bond, that Harney was duly elected sheriff and tax collector of Hinds County, and that he executed a sheriff's bond in the penalty prescribed by law, which was approved and accepted, and thereupon he was entitled to the office of sheriff and tax collector without executing any new or further bond; but that the board of supervisors of the county demanded a tax collector's bond unknown to the law, falsely claiming and insisting that the execution of such bond was necessary, and that unless the same was given they would proceed to have the office of sheriff declared vacant; and that Harney, coerced by and under duress of said board, executed and caused to be executed said bond. The circuit judge overruled a demurrer to this plea, and, as we think, incorrectly. The exact point was decided by the Supreme Court of New Jersey, in *Sooy* v. *State*, 38 N. J. 324. The threat of the board of supervisors was nothing more than to resort to legal proceedings to enforce their view of the law. As was said in the case above cited, the threat was either idle, such as neither the law nor any sensible person would regard, or meant that, in case of refusal to give the bond called for, a legal course would be pursued. A demand made under the urgency of an intimation that, if not complied with, the law will be appealed to,

cannot reasonably be claimed to be either extortion or duress. It does not, in legal contemplation, place the person against whom it is aimed *in vinculis*, nor destroy in any degree his free agency.

*Judgment reversed and cause remanded.*

CAMPBELL, J., delivered the following dissenting opinion.

I dissent from the conclusion that the bond given when no law required it, and when the law required another bond, which was duly executed, has any validity as security to the State for taxes. It is not obligatory as a common-law instrument for the want of a legal consideration. At common law the seal estopped the obligors from saying that there was no consideration, and thus the seal stood for a consideration ; but happily we are freed from this absurdity by a statute which allows inquiry into the consideration of sealed instruments, and in this respect they are as simple contracts. It is certain that there was no legal consideration for this bond. No law required it. There was no advantage to the promisors, and no loss, injury or inconvenience to the promisee, by virtue of its execution. The obligors acquired no right, derived no advantage, made no gain, by reason of it. Harney had been duly elected sheriff. The execution of his bond as sheriff was a full compliance with law. No obligation rested on him to give another bond. No officer or tribunal could lawfully demand of him another bond as a qualification for his office, or displace or interfere with him for not giving another. The additional bond was therefore *nudum pactum*. It is not of force as a statutory bond, because not in compliance with any statute. No statute required it, or provided its penalty, or authorized any officer to require it, or to accept and approve it. It is true that the Supreme Court of the United States has decided in several cases that a voluntary bond given by an appointee to office, by virtue of the requirement of his superior officer, is valid ; but the principle which supports this view is that such a requirement is within the range of the proper discretion of the officers of the government, and although no law may require it, if the appointing power requires a bond as the condition of entering or continuing to hold the office, it is valid when ex-

ecuted. This is the principle of *Sooy* v. *State*, 38 N. J. 324, cited in the opinion of the majority. Some courts, without noting the obvious principle on which these cases rest, have followed their result, and have held that official bonds not required by law are obligatory. The difference between an appointee to office whose superior officer, in the exercise of a sound discretion vested in him by law, requires a bond to enable his appointee to hold the office, and an officer elected by the people, according to law, to an office the qualification for which is prescribed by law, with an indefeasible right to the office upon the terms prescribed by law, with no law requiring a bond, and no superior or other person in authority with a discretion to exact a bond, is plain ; and in *State* v. *Bartlett*, 30 Miss. 624, such a bond given by a public officer was held to be void. It may be conceded that this case is wrong, and still the bond here sued on is not enforceable. Here a bond was required, — a sheriff's bond, — a valid security for taxes and all other official duties. In giving that, Harney did all the law required. The additional bond, as I think, was mere waste-paper, required by no law, supported by no consideration.

CHALMERS, J. If I could regard the question of the obligatory force of a bond given by a public disbursing officer where no statute required the giving of it, as an open one, I should be inclined to hold with my brother Campbell, that such a bond was not binding. But this court, in at least five cases, has arrived at a different conclusion, and in so doing has followed the overwhelming weight of American authority, both State and Federal. Our own case of *State* v. *Bartlett*, 30 Miss. 624, stands almost, if not entirely, alone among cases decided during the last forty years, in declaring such bonds invalid, and is virtually overruled by the repeated decisions in the later volumes of our reports cited in the opinion delivered by the Chief Justice holding them obligatory. Elsewhere the decisions seem uniformly to hold the principals and sureties on such bonds liable for any default covered by their terms. Brandt on Suretyship and Guaranty, §'444. I do not feel at liberty to set my individual opinion of what the law ought to

be in opposition to this concurrent weight of authority as to what it is.

GEORGE, C. J., delivered the opinion of the court in the case of the county taxes.

In this case many of the questions which were presented in the preceding case are raised, and they are settled in the same way. It is necessary to determine only one question in this case not settled in the other. Among the many pleas interposed to this action was one to the effect, that the taxes for the county were levied by the board of supervisors, sitting in the city of Jackson instead of at the court-house in the town of Raymond. It has been held by this court that such a levy was irregular, and did not confer on the sheriff the power to seize and sell property. *Johnson* v. *Futch, ante,* 73. Whatever may have been the ancient rule on this subject, it seems now to be settled, in accordance with reason and justice, that the want of power in the tax collector to collect taxes, by reason of any irregularity in the assessment or other proceeding necessary to confer the power, is not a good defence to an action against him for non-payment of the money actually collected. He is treated as the agent of the State or county in collecting the money, and as having received it for the benefit of his principal; and he will not be permitted to rely upon technical objections which might be made to the right of the State or county to it. The tax-payers who paid the money voluntarily are considered as having paid it to him for the use of the treasury; and he will not be permitted, having thus received it, to question the right of the State or county to it. Cooley on Taxation, 497, 498, and authorities there cited. The objection is purely technical, and relates solely to the irregular execution of a power clearly vested in the board of supervisors. It is not pretended that the taxes levied were illegal, or in excess of the amount authorized by law to be laid on the people and property of the county. The sole objection is, that the board of supervisors, under a mistaken view of the law, held their sessions in the wrong judicial district of the county. These views seem to be conclusive against the tax collector who received the money. The sure-

ties on his bond are also liable, if the failure of the sheriff to pay over the money comes within the terms of the bond and constitutes a breach of it as written.    This failure comes within the terms of the bond.    We have shown that the county treasury is entitled to the money, and one of the conditions of the bond is that Harney "will promptly pay into the State and county treasuries all moneys collected by him and to which said treasuries shall be respectively entitled."

*Judgment reversed and cause remanded.*