## Henry, Ins. Com'r, *v.* State *ex rel.* Coody.

[95 South. 67. In Banc, No. 23097.]

1. INSURANCE. *State insurance commissioner not "tax collector" within Constitution, authorizing Governor to suspend pending investigation of accounts.*

   The state insurance commissioner is not a tax collector within the meaning of section 125 of the Constitution of 1890, under which the Governor is given the power to suspend alleged defaulting state and county treasurers and defaulting tax collectors pending the investigation of their respective accounts, and empowering him to make temporary appointments of proper persons to fill the offices.

2. STATE. *State treasurer only state officer to which Governor's constitutional power of removal pending investigation of accounts applies.*

   The only state office to which this section applies is that of state treasurer.

3. OFFICE OF TAX COLLECTOR COUNTY OFFICE.

   When this section of the Constitution was adopted there had existed for many years in the state the office of tax collector, with well-known duties and functions. And this was a county office, and was held by an incumbent empowered under the statutes to generally collect state and county taxes within each county.

4. COUNTIES. *Governor's constitutional right to suspend state and county treasurers and tax collectors pending investigation of accounts pertains to incumbents of the offices, and not to their powers and duties.*

   This section of the Constitution deals with the incumbents of the three offices therein mentioned, and not with their powers and duties.

APPEAL from circuit court of Hinds county.

HON. W. H. POTTER, Judge.

*Quo warranto* by the state, on the relation of Excell Coody, against T. M. Henry, Insurance Commissioner, to remove him from office. From a judgment ousting defendant, he appeals. Reversed and dismissed.

*Fulton Thompson, J. Harvey Thompson* and *R. H. Thompson,* for appellant.

CONSTITUTIONAL METHODS FOR REMOVING STATE OFFICERS FROM OFFICE.   The Constitution of 1890 very conclusively shows that the rights of officers to retain the offices to which they have been elected or otherwise chosen are sacredly guarded and respected by our fundamental law and that they can be removed or suspended from office only in conformity with one of the four constitutional provisions on this subject.

Our state Constitution provides the following methods by which state officers may be removed from office: 1st. Impeachment by the house of representatives and conviction after trial by the state senate.   Mississippi Constitution 1890, sections 49, 50, 51 and 52.   This applies to all civil officers whether constitutional or statutory.   Appellant Henry has not been impeached, although the exhibits to the information show that a committee of the house of representatives at its 1922 session investigated his accounts and made special report to the house, falling far short of even recommending an impeachment.

2nd.   Officers may be addressed out of office.   The judges of the supreme court and of inferior courts may be removed from office by the governor on the joint address of two-thirds of each branch of the legislature, Mississippi Constitution of 1890, section 53.   Of course, section 53 has no affirmative application to the case at bar, but to some extent, when read in connection with other constitutional provisions on the subject were intended to be exclusive and to forbid other proceedings seeking to remove officers from their respective offices.   This section applies only to designated officers.

3rd.   INDICTMENTS FOR CRIMES.   "All public officers for wilful neglect of duty or misdemeanor in office, shall be liable to presentment or indictment by a grand jury; and, upon conviction shall be removed from office, and otherwise punished as may be prescribed by law."   Mississippi Constitution of 1890, section 175, applicable to all officers.

Our client Henry, has not been indicted or presented by a grand jury, either for wilful neglect of duty or misde-

meanor in office. If he be guilty as alleged by the governor and sought to be charged by the information in this case he should have been indicted by the grand jury, since a failure to pay over public money due the state treasury is a wilful neglect of duty, although it may amount to a felony, and every presumption is that the grand jury of Hinds county performed its duty by investigating the Insurance Commissioner's accounts and found that he was not a defaulter, and hence failed to indict him. However, as there is no pretense that Henry has ever been indicted as a defaulter it follows that section 175 of the Constitution has no other application to this case than its probative force showing that the provisions of the Constitution on the subject of removing officers from office are exclusive and forbid removals save in accordance with Constitution and warrants only a suspension of designated officers.

The section is in these words: "The governor shall have the power, and it is hereby made his duty to suspend alleged defaulting state and county treasurers and defaulting tax collectors, pending the investigation of their respective accounts, and to make temporary appointment of proper persons to fill the offices while such investigations are being made, and the legislature shall provide for the enforcement of this provision by appropriate legislation." It will be seen from the language of the section that it is a grant of power to the chief executive of the state, but at the same time it places distinct limitation on the power granted.

FIRST LIMITATION. The power granted the governor is the right to suspend from office alleged defaulting state and county treasurers and defaulting tax collectors; aside from the fact the section applies only to designated officers; the limitation is that the suspension shall be only "pending the investigation of their respective accounts." Emphasis must be placed on the word "pending" in the quoted phrase. No power is given the governor to suspend an officer of any kind after his accounts have been investigated, no matter what the investigation may have dis-

closed. This, we submit, is apparent, not only from the
language of the Constitution conferring the power to sus-
pend, limiting the suspension to the time the investiga-
tion is pending, but as well by the concluding clause of the
section limiting the term of the governor's temporary ap-
pointee to fill the office "while such investigation is being
made."

SECOND LIMITATION. The governor is without power un-
der section 125 of the Constitution of 1890 to suspend from
office any officer not specifically named in the section;
that is to say, he may suspend pending the investigation
of their respective accounts only alleged defaulting state
and county treasurers and defaulting tax collectors; he
is without power to suspend any other officer than those
named in the section. The state insurance commissioner
is not named in the section and he is not a tax collector.

We discuss the point just mentioned that the insurance
commissioner is not a tax collector hereinafter, but will
here say, while analyzing section 125 of the Constitution,
that the section by its terms negatives the idea that every
officer authorized to receive taxes of any kind is a tax col-
lector. There is a distinction between a receiver of taxes
and a tax collector. The section specifically designates
defaulting state and county treasurers as well as default-
ing tax collectors. If the terms "tax collectors" embrace
and include officers into whose hands tax moneys are re-
ceived, it would embrace state and county treasurers and
it was useless to have inserted treasurers in the constitu-
tional section we are now considering. The principal duty
of state and county treasurers is to receive tax moneys and
to account for the same. In this connection see *Hubbell* v.
*Board of Commissioners of Bernalillo County,* 13 N. Mex.
546, S. C., 86 Pac. 430, defining a tax collector to be one
whose duty it is to enforce the collection of taxes and does
not refer to a county treasurer to whom taxes are paid,
he having no power to enforce their payment by tax payers.
The Constitution makers had this very distinction in mind.

Section 125 of the Constitution must be read in con-
nection with other sections of that instrument. We sug-

gest that it must specially be read in connection with section 14 of the fundamental law, providing that: "No person shall be deprived of life, liberty or property, except by the due process of law." An officer has a property right to the emoluments of his office within the meaning of the section, and he has a right to continue in office until the expiration of his term, which, is more certainly sacred than a mere property right; his character for integrity is assailed by proceedings to remove him from office.

In fact, the due process of law clause of our Constitution must be treated as read into the section 125 and into every other section of the Constitution. The due process of law clause of the bill of rights and section 125 are not in conflict but are in perfect harmony when read and construed together. Section 4787, requiring 'the governor to notify the attorney-general in case of the state treasurer, or the proper district attorney in case of a county officer, of the facts, and require him to institute proper proceedings in court for the investigation of Henry's accounts and the judicial determination of the *status* thereof. To make the *ex parte* report of the examiner perform any other function is to deny the alleged defaulter due process of law. Careful consideration of this statute by the court is requested. When considered in connection with section 125 of the Constitution it shows four things materially to be considered in this case.

FIRST. The Constitution itself (section 125) clearly contemplates that the governor shall cause to be instituted either before or coincidentally with his suspension of an officer, an investigation of the officer's accounts, not an *ex parte* one but one judicial in its nature to which the officer is made a party and given a right to defend himself and to show, if he can, that he was not and is not a defaulter. An officer can be suspended under section 125 of the Constitution only pending an investigation of his accounts. A suspension cannot be had before an investigation is begun, nor after one concluded.

SECOND. The statute (Hemingway's Code, section 4784) shows that the legislature, when endeavoring to enact statutes as authorized by section 125 of the Constitution, properly construed· the constitutional provisions as being applicable only to one state officer, the state treasurer therein specifically named.

If to any extent the provisions of section 125 of the Constitution can reasonably be claimed to be self-executing to that extent it may not be limited by the "due process of law" clause; but we earnestly insist that any and all legislation purporting to make the section operative must respect "due process of law" as our statutes do, and not deny the officer sought to be removed from office the rights · guaranteed by section 14 of the state Constitution.

THE STATUTE, HEMINGWAY'S CODE, SECTION 4786. Section 4786, Hemingway's Code, provides that when the state treasurer or any county treasurer or any tax collector is alleged to the governor, credibly to· be a defaulter, the governor shall direct the examiner (meaning an expert accountant appointed under section 4780, same Code) forthwith to examine the accounts of the alleged defaulter and as soon as practicable to report the condition of such officer's accounts. So far the statute may be and no doubt is constitutional but it will be noted that the examination of the officer's accounts and record books to be made by the . examiner as provided by statute is an *ex parte* one. The alleged defaulting officer is given no opportunity to be heard; he is not empowered or given a chance to point out the most glaring errors to his prejudice· into which the examiner may have fallen. Section 125 of the Constitution contemplates and requires an investigation into the officer's accounts meaning of course, a judicial investigation, one not *ex parte,* but one in which the officer has a right to be heard and to contest, if he can, every item of charge made against him, and to show if he can, that he is entitled to credits not given him in the progress of the litigation. Section 125 never designed to deprive the officer whose accounts are being examined of that due pro-

cess, of law guaranteed to every person by the bill of rights named. The legislative department of the government never entertained the far-fetched conception that section 125 of the Constitution by the use of the words "tax collector" meant for the terms to embrace officers other than the well-recognized county tax collectors, having power to enforce the collection of taxes. We dare say that there was not a member of the constitutional convention who thought for one moment that the term "tax collector" used in the section applied to or could be held to embrace any other officer than a county tax collector.

THIRD. The Code section (Hemingway's Code, sec. 4787) is a limitation on the power of the governor. He cannot in case of suspension of an officer under section 125 of the Constitution evade the duty required of him by the statute. If he proceeded on the conception that the insurance commissioner was a tax collector but not a county officer it was nevertheless his duty to have required proceedings in court for the investigation of the accounts, books, etc., of the insurance commissioner "and the judicial determination of the *status* thereof." The institution of such proceedings is made by law a necessary and preliminary incident of the governor's power to suspend an officer.

The insurance commissioner is not a tax collector. One thing is absolutely certain, the statutes of this state have never treated, directly or by implication, the insurance commissioner as being a tax collector. The statutes provide that the sheriffs of the respective counties shall be the tax collector thereof and require them to execute bonds as tax collectors. Code 1906, sec. 4694. They are made the collectors of state as well as of county taxes. This has been the law of Mississippi for several decades; was the law of the state for many years before the meeting of the constitutional convention of 1890. So well known was this that no man in Mississippi in 1890, or at any time since, until this case arose, ever conceived that there were tax collectors in this state other than the sheriffs, made *ex officio* tax collectors within their respective counties.

Words used in a Constitution as well as in statutes, other perhaps than technical ones, are to be construed according to their usual and common acceptation. We do not believe before this controversy arose, that a person in this state, man or woman, lawyer or layman, could have been found who would have thought any state officer was a tax collector within the meaning of section 125 of our Constitution or the statutes, enacted for carrying that section into operation, although it was well known that the auditor of public accounts, the secretary of state, the land commissioner and perhaps other state officers were in certain cases authorized to receive moneys voluntarily paid them as taxes of one sort or another. Our associates have promised to point out to this court in their briefs a large number of both state and county officers who are tax collectors if the insurance commissioner be one; we will, however, for fea_ they shall fail to mention them, say that the clerks of the circuit courts collect a jury tax to be paid into the county treasuries; the chancery clerks collect taxes when they receive money for the redemption of tax sales and they are all tax collectors if the insurance commissioner be one.

Anderson (one of the best lexiographers) in his Law Dictionary, under the title "Collector," defines the term thus: "A public officer charged with the duty of exacting and receiving payment of money due the Government, as of taxes, or of custom or Revenue duties."

The insurance commissioner, as we understand the law, is wholly without power to exact payment of any money whatever. He is simply authorized to receive same when voluntarily tendered him. If the money he is authorized to receive does not come into his hands voluntarily and its payment has to be exacted or enforced its enforcement must be by and through some other officer or instrumentality. See again *Hubbell* v. *Board of Commissioners of Bernalilo County,* 13 N. Mex. 546; s. c. 86 Pac. 430; see also *Lobban* v. *State,* 9 Wyo. 377; s. c. 64 Pac. 82, 86, holding that a tax collector is empowered to enforce collections by resort to summary remedies, etc. There may,

perhaps, be found court decisions based upon peculiar statutes seemingly to the contrary, but they will doubtlessly be found to be governed by the statutes of the state where rendered.

Constitutional provisions and statutes granting power are never to be given a latitudinal construction so as to enlarge the power or to bring within their scope, cases not clearly embraced therein; they are to be construed, not so strictly as to destroy the grant, but should never be enlarged by construction beyond the plain import of their terms. If there be a reasonable doubt touching their application to a particular case, officer or person, the courts should and do deny the power doubtfully granted. Cooley in his work on Constitutional Limitations, pp. 73, 74.

*George Butler* and *F. H. Lotterhos,* for appellant.

This appellant collecting taxes as insurance commissioner, as alleged in the petition, was not and is not such tax collector as is described in section 125 of the Constitution of Mississippi.

The words, "tax collectors," had a definite meaning at the time the Constitution of 1890 was adopted. This court, speaking of the performance of the duties of tax collector by the sheriff, has held that although the statute provides that the duties required by law to be performed by the tax collector shall be performed by the sheriff, yet the intention of the law is merely that the same individual shall perform the duties of both offices, they are, however, separate and distinct. See *More* v. *Foot,* 3 George, or 32 Miss. 367.

Again speaking of article 5, page 71, of the Code of 1857, it is said: "The sheriff of each county shall be tax collector therein, . . ." The code of 1871 does not, in terms, contain this article, although the responsibilities of tax collectors are enumerated and defined very much as in the former Code. The entire 22nd chapter on the subject of public revenues accepts as a fact that there is a person

charged with the duty of collecting revenue, state and county, who is denominated collector, sometimes tax collector, thus article VII, section 1690: "On receipt of the assessment rolls the collector shall proceed to collect and receive the taxes and it shall be the duty of every person assessed to pay his taxes to the collector."

Section 1372. . . . "The clerk of the board shall thereupon certify the same to the auditor of public accounts, and the sheriff of the county, as directed by law." Section 1374. . . . "Makes it the duty of the person collecting the state taxes to collect also the county taxes." Section 1685. "It will be seen that after all objections to the assessment roll have been settled, the clerk of the board of supervisors shall make two copies thereof. One shall be sent to the auditor of public accounts, and the other shall be delivered to the tax collector." In the former section the roll is directed to be delivered . . . to the sheriff, and in the latter it shall be delivered to the tax collector. . . . In the former, the sheriff is assumed to be the collector, or the person to receive the assessment roll for that purpose."

"If the duty of collecting the taxes is not incident to the office of sheriff, then they have had no *de jure* collector since October, 1871, when the Code went into effect. The last provisions of the laws repeatedly refer to the office of tax collector. The legislature has been in session every year since the Code was adopted, and has, in its laws, made frequent mention of that officer and his duties." See *Byrnes* v. *State,* 50 Miss. 688.

A most pertinent and important authority in this case is that to be found in *French* v. *State,* 52 Miss. 579, where this court reviewed the history of the office of tax collector in Mississippi, pointing out that the offices of sheriff and tax collector were separate and distinct, and that after a time it was provided that the sheriff should perform the duties of tax collector. The value of this decision in this connection is confined, not only to the point just mentioned, but it is to be found also in the clear recognition which

the court gives to certain of the rules of construction which are now being suggested as proper to be utilized in the solution of the case at bar.

That the office of "tax collector" just before and at the time of the adoption of the Constitution of 1890, was regarded by this court as a separate and distinct office, and not as one which was collateral to or appertained to any officer who might collect public funds is made patent by reference to the decisions of this court in *Griffing* v. *Pintard,* 3 Cushman, 173; *McNutt* v. *Lancaster,* 9 Smedes & Marshall, 570; *Harris* v. *State,* 55 Miss. 50; *State* v. *Matthews,* 57 Miss. 1; *State* v. *Harney,* 57 Miss. 863; *Hyde* v. *State,* 52 Miss. 665.

This is made manifest by reference to the case of the *State* v. *Thibodeaux,* 69 Miss. 92, where this court says that the above named case of *French* v. *State,* is to be regarded as approved and adopted by the Convention of 1890, and again by reference to the case of the *State* v. *Tonella,* 70 Miss. 701, where this court says that the Constitution of 1890 contemplates that the assessor shall have the well-known functions that have theretofore pertained to that office.

The makers of the Constitution of 1890 knew that the legislature had all the while considered the office of "tax collector" separate and distinct, and not as collateral or incidental to all state or county officers who happened to receive taxes of other public moneys. That the legislature did so treat this office appears from many Code sections, among which the court's attention is respectfully directed to the Code of 1880 and sections therein numbered, 466, 488, 510, 511, 513, 515, 516, 517, 518, 519, 520, 521, 523, 524, 525, 526, 527, 529, 530, 531, 533, 540, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552, 553, 554, 555, 557, 559, 560, 567, 569, 573, 574, 580, 581, 585, 587, 588, 589, 590 and 594, inclusive of the same Code.

So it appears that the Constitution makers not only knew that the court regarded the office of "tax collector" as one not collateral or pertinent to all officers who received taxes, but that the legislature likewise so regarded the office.

Where a word has acquired a fixed technical meaning in the legal and constitutional history, it is to be presumed to have been applied in that sense in the written Constitution. See 6th Edition, Cooley, Constitutional Limitations, page 44; First Story's Constitution of the United States, section 453, and *Com.* v. *State Treasurer,* 13 Pa. District, 231, and 12 Corpus Juris, 706.

This court says: "It is a general rule that where terms used in the common law are contained in the statute or Constitution, without any explanation of the sense to which they are implied, they should receive that construction which has been affixed, to them. . . . In all cases where the term "jury" is used in our statute, it is regarded as one of fixed and determined meaning, ascertained by the paramount law. See *Carpenter* v. *State,* 4 Howard, 163.

When the framers of the Constitution employed terms which in legislative and judicial interpretation have received a definite meaning and application which may be more restricted or general than when employed in other relations, it is a safe rule to give them a signification sanctioned by the legislative and judicial use. See *McGinnis* v. *State,* 9 Hump. (Tenn.) 43; *Board of Revenue* v. *State,* 172 Ala. 138, 54 So. 757; *Jenkins* v. *Ewin,* 8 Heisk. 456; *Crisman* v. *Brookhaven,* 70 Miss. 478.

All legislative construction will be given serious consideration by the courts. See 12 Corpus Juris, 714, and *Dantzler* v. *State,* 97 Miss. 355, 53 So. 1, holding that words having a definite meaning at common law, should be given that meaning unless it is clear that they were used in a different sense, and that a legislative construction is of weight in construing an ambiguous or doubtful constitutional provision. At page 751 of 12 Corpus Juris it appears that such legislative construction is sometimes con-

clusive, and that a compilation of statutes soon after a Constitution, constitutes contemporaneous construction insofar as it furnishes evidence as to how the Constitution was understood.

From a consideration of all of the foregoing, the appellant is emboldened to maintain that the makers of the Constitution of 1890 did not intend to give the governor the power or to authorize the legislature to make such power effective to suspend any officer elected by the people of Mississippi other than the state treasurer, the county treasurer and the tax collector, who collects in the county for the county and the state, the duties of the last named officer being discharged in 1890, and at this time by the sheriff of the county only.

Section 125 of the Constitution requires the legislature, in providing for suspension from office, to provide with certainty for an investigation of the accounts which has not been done with reference to the office of insurance commissioner, no provision whatever, having been made. The Constitution permits the legislature to provide a means of filling vacancies in office only when the mode is not provided by the Constitution. If the Constitution declares the mode that is a limitation or a prohibition on the legislature not to adopt a different one. *O'Leary* v. *Adler*, 51 Miss. 28.

It is of the nature and essence of fundamental law of the state that it avoids every act done in violation of its provisions. *Shelby* v. *Alcorn*, 36 Miss. 273. Where the manner of exercising a given power is prescribed, the method designated is exclusive. A constitutional provision authorizing the legislature to do a certain thing in a certain manner, is an implied limitation on the part of the legislature to do the thing only in the manner prescribed. 12 Corpus Juris, 750.

The legislature has not attempted in any part of its statute laws to provide a suspension after indictment and before conviction. Such a law, if enacted, and if it operated as a practical removal before conviction, would be

of doubtful constitutionality, in that it would give an indictment that effect which the constitution attaches to conviction only, and inflict punishment before trial. Certainly, in the absence of legislation, no such power resides in the circuit court. If convicted, the law removes him. If acquitted, even upon the doctrine of reasonable doubt, he must remain in office until the expiration of his time. *Ex parte Lehman,* 60 Miss. 967.

If sections 4779 and 4786 of Hemingway's Code are intended to apply to the insurance commissioner, they and the alleged suspension thereunder are violative of sections 1, 2 and 144 of the Constitution. Questions involved are judicial and in the light of the constitutional sections mentioned, cannot be delegated by the legislature to the governor as chief executive. The legislature has no authority to delegate judicial powers to executive or ministerial officers, or to any classes that are not judicial. 12 Corpus Juris, 808.

The power to remove an officer is not, under our system of government, to be implied as a part of the inherent power of the governor, or other executive officer. Such power may or may not be vested by the Constitution in the executive . . . in the absence of a provision giving the governor the power he does not possess. 12 Corpus Juris, 899.

Whether the incumbent has done an act which ought, in law, to result in the forfeiture of the office, to adjudge and pronounce upon which would not, according to the theory and structure of the government fall legitimately within the scope of legislative action the question, in its very nature, would be one for judicial action. *State* v. *Smedes and Marshall,* 4 Cushman, 47.

The separation of the legislative, judicial and executive powers of government is the fundamental principal of American Constitutional Jurisprudence, and cannot be violated, even by a constitutional convention. *Lawson* v. *Jeffries,* 47 Miss. 686.

The Code sections mentioned, if applied to the office of insurance commissioner, violate sections 49, 50, 51, 139 and 175 of the Constitution. This officer elected for a four year's term can be removed only by impeachment or conviction and a suspension upon an *ex parte* examination by an auditor or examiner, without a specified method of judicial hearing is the exact equivalent of a removal.

He may be removed by the constitutional method only. *Runnells* v. *State*, 1 Walker 146; *McNutt* v. *Lancaster*, 9 S. & M. 570; *Hyde* v. *State*, 52 Miss. 665; *Ex parte Lehmann*, 60 Miss. 967; *Morre* v. *State*, 45 So. 866; *St. Board of Health* v. *Mathews*, 74 So. 417, 113 Miss. 510; *Pruitt* v. *State*, 76 So. 761, 116 Miss. 33; *Newsome* v. *Cocke et al.*, 44 Miss. 342, 361-3; *Lizano* v. *Pass Christian*, 50 So. 981, 96 Miss. 640.

One provision of the Constitution must be construed with reference to or in connection with the others, so that full, complete and harmonious action may be given to all of them. *Green* v. *Waller*, 32 Miss. 695; *Bd. of Revenue*, 54 So. 757. Suspension under the said Code sections deprives the appellant of his property without due process of law in violation of the state and Federal Constructions as set forth in the demurrer. *The State* v. *Smedes & Marshall*, 4 Cush. 47; *Franch* v. *State*, 52 Miss. 579; *Hyde* v. *State*, 52 Miss. 665; *State* v. *McDowell*, 71 So. 867; *Ware* v. *Poole*, 71 So. 868, 72 So. 237, 103 Ga. 458.

An office having emoluments attached is a thing of value of which a *de jure* officer cannot be deprived without due process of law. *Finnernan* v. *Burlington*, 93 Atl. 254, 89 Vt. 1. Due process is a law which hears before it condemns, proceeds upon inquiry and renders judgment only after trial. *Ekern* v. *McGowen*, 142 N. W. 595, 154 Wis. 157, 46 L. R. A. (N. S.) 796; Meachem on Public Officers, sec. 454. That the judgment of the trial court should be reversed and the petition dismissed, is respectfully submitted.

*J. W. Cassedy, Chalmers Potter* and *Claydon D. Pottery,* for appellee.

The suspension of the insurance commissioners by the governor and the appointment of the relator to discharge the duties of that office pending the investigation was done in pursuance of section 125 of the Constitution of 1890, which section of the Constitution is as follows: "The governor shall have the power, and it is hereby made his duty, to suspend alleged defaulting state and county treasurers, and defaulting tax collectors, pending the investigation of their respective accounts, and to make temporary appointments of proper persons to fill the offices while such investigations are being made; and the legislature shall provide for the enforcement of the provision by appropriate legislation."

CONTENTION THAT INSURANCE COMMISSIONER IS NOT A TAX COLLECTOR IN A CONSTITUTIONAL SENSE. The first point made is that under the constitutional provisions that the insurance commissioner is not a tax collector and that the framers of the Constitution had in mind those officers who at the time of the adoption of the Constitution were tax collectors. It is our contention that any officer whose duty it is to collect taxes is a tax collector within the letter and the spirit of the Constitution.

It cannot be questioned that the letter of section 125 of the Constitution is broad enough to cover the insurance commissioner. It uses the words "to suspend alleged defaulting state and county treasurers and defaulting tax collectors." Section 2625, Code of 1906, provides that premium taxes shall be paid to the commissioner in February and August of each year. Section 2626, Code of 1906, provides that fees for licenses issued to any fire, marine or accident insurance company to do business in the state, shall be two hundred dollars per annum, etc.

Section 2627, Code of 1906, provides that every agent or organizer of any insurance company, or fraternal order, authorized to do business in this state shall be required to obtain annually from the commissioner of insurance and banking a certificate under the seal of his office showing that the company or association for which he or she

is agent or organizer is licensed to do business in this state. Section 2628, Code of 1906, provides that the commissioner of insurance shall furnish to the auditor on or before the 10th day of each month a statement in detail of the taxes and licenses received by him under this chapter during the previous month, and shall pay to the treasurer the amount in full of such taxes and licenses.

Section 2629 of the Code of 1906, provides that the commissioner shall collect and pay into the state treasury the following licenses and taxes, which shall be in lieu of all other licenses and taxes, state, county or municipal, and fixes the license tax for life insurance companies or associations and fire insurance companies or associations, for accident insurance companies or associations, and for premium taxes. Under section 2561 of the Code of 1906, it is provided that whenever any companies or orders or their officers or agents fail or refuse to comply with any provisions of the insurance chapter that the attorney-general or district attorney under his direction on notice by the commissioner shall institute such proceedings as are authorized by law and to prosecute same to final judgment, etc.

From a reading of the above sections it is clear that the insurance commissioner is authorized and directed to collect taxes, and ordinarily an officer whose duty it is to collect taxes is a tax collector. At all events, the words "tax collector" used in the statute is broad enough to cover any one exercising the function of collecting taxes for the state or any subdivision thereof. It is not controverted that the insurance commissioner is authorized to collect taxes, and it cannot be denied that in the broadest sense he is a tax collector, but it is contended that as meant by section 125 of the Constitution he is not a tax collector. It being pointed out that at the time of the adoption of the Constitution that the sheriffs were the only tax collectors. 4 Words & Phrases (2 ser.) page 855, also 8 Words & Phrases (1 Ed.) page 6886.

It is not contended that the power to collect taxes placed
in the insurance commissioner was beyond the constitu-
tional authority of the legislature. We submit, therefore,
that section 125 of the Constitution applies to all persons
who exercise the function of collecting taxes. Just as, at
the time of the adoption of the Constitution of 1890, and
long after, by legislative act, the sole authority to equalize
assessments was in the boards of supervisors. Yet when
the tax commission law divided the power of assessment
between the boards of supervisors and the state tax com-
mission, section 112 of the Constitution of 1890, directing
how assessments should be made applied to the state tax
commission. The creation of the state tax commission had
not been thought of by the constitutional convention of
1890, but the functions performed by that body were per-
formed by the boards of supervisors until, the enactment
of the state tax commission law, yet notwithstanding the
fact that the tax commission had not been thought of by
the constitutional convention of 1890 the state tax com-
mission in exercising their functions in the equalization
of assessments is bound by the provision of section 112 of
the Constitution. The Constitution deals, as a rule, with
principles, and with functions rather than with the name
by which certain officers are designateed, 6 R. C. L. 16.

The clear purpose of section 125 of the Constitution of
the state is to protect the public revenue and public funds.
There is certainly no logical reason, no reason of public
policy, no reason even of expediency, why the insurance
commissioner, in exercising his duties as a tax collector,
should not be included within the meaning of the statute.
The argument that the insurance commissioner was not
a tax collector at the time section 125 of the Constitution
was adopted, and is, therefore, not within the terms of the
statute, is as untenable as the defense to a suit for a printed
libel attempted in England during the reign of William
III on the ground that the libel statute was enacted by the
Parliament of England prior to the invention of printing,
and therefore, did not apply to printed libels. We think it

clear that section 125 is within the letter of the statute, and since its very purpose was the protection of public revenue and the public funds, it is within the spirit of the Constitution, and there can be no other construction than that it intends to, and does, cover any office upon whom the function of collecting taxes has been imposed since the adoption of the Constitution.

A suspension under section 125 of the Constitution and the statutes above enumerated is not a conviction of crime, nor does it carry with it a forfeiture of the office, or the emoluments thereof. The suspension was made only for such time as is necessary to determine through ordinary channels for civil suits or criminal prosecutions, the guilt or innocence of one reported to be a defaulter, and such investigations as contemplated by law are now in progress, as the chancery bill of complaint made an exhibit to the information shows, and it includes not only items for which suit had already been brought, but there is included in the suit the additional items found by the accountant, Mr. Davis, in his investigation under appointment by the governor.

We, therefore, confidently assert that the law has provided amply, machinery to carry into effect section 125 of the Constitution of the state as to the insurance commissioner and any other tax collector charged with being a defaulter. It may be that when the examiner had presented himself at the office of the insurance commissioner under the authority vested in him by the governor, the insurance commissioner might have rightfully demanded an inspection of the governor's commission before turning over to him his books and accounts, but the books and accounts having been turned over to him, examined, and the examiner having made his report to the governor, the fact that the examiner was not commissioned could hardly seriously impair the credibility of the evidence upon which the governor bases his information. See section 3473, Code 1906. At all events when the chief executive of the state issues his proclamation declaring that an act

which he is authorized to do has been performed on credible information, the courts have no authority to inquire into the sources of that information. The governor belongs to a separate, distinct and co-ordinate branch of government, and when acting within authority conferred upon him verity is imputed to his acts.

SYKES, J., delivered the opinion of the court.

This suit is a *quo warranto* proceeding instituted by the state, on the relation of Excell Coody, in the circuit court of Hinds county, against T. M. Henry, insurance commissioner of the state of Mississippi, to remove him from office. The appellee Coody claims to be entitled to the office by virtue of an alleged appointment thereto by the governor. The appellant, Henry, interposed a demurrer to the petition, which was overruled by the court. He then filed an affidavit of merits, and asked to be allowed to plead. His petition to plead was denied, and judgment final was rendered ousting Henry from the office, from which judgment this appeal is prosecuted.

In this case we are called upon to say whether or not the state insurance commissioner is a tax collector within the meaning of section 125 of the Constitution. This section is as follows:

"The governor shall have the power, and it is hereby made his duty, to suspend alleged defaulting state and county treasurers, and defaulting tax collectors, pending the investigation of their respective accounts, and to make temporary appointments of proper persons to fill the offices while such investigations are being made; and the legislature shall provide for the enforcement of this provision by appropriate legislation."

Pursuant to the mandate to the legislature to provide for the enforcement of this provision by appropriate legislation, the able lawyers who drafted the Code of 1892 placed therein and the legislature of that year adopted sections 2170, 2171, 2172, 2173, 2174, 2175, 2176 and 2177, and these legislative enactments have been substantially readopted by the codifiers, and are found in the Code of 1906,

and also in Hemingway's Code, in their original form as they appeared in the Code of 1892. We shall discuss more in detail these provisions hereafter.

The department of insurance was created and first appears as chapter 69, Code of 1906. In this chapter the office of state insurance commissioner is created. His duties are set forth in detail in this chapter. Section 2625 provides for the payment of premium taxes by insurance companies twice each year to the commissioner. Section 2626 provides for license fees to be paid to the commissioner. Section 2629 provides for the payment by the commissioner into the state treasury of license and premium taxes paid to him. Section 2561 vests in the insurance commissioner power to have the attorney-general or district attorney bring suit against insurance companies or others governed by this chapter when these companies in the judgment of the commissioner, have failed to comply with the law. It will be noted that there are many important duties vested in this officer relating to the solvency and the proper conduct of both life and fire insurance. It is unnecessary here to go into a detailed enumeration of the duties of this officer.

It is the contention of the appellee, and the learned circuit judge so held, that the insurance commissioner is a tax collector under section 125 of the Constitution. An examination of all of the previous Constitutions of the state shows that the words "tax collector" appear in none of them before the Constitution of 1890, and in this Constitution it only appears the one time and in the above section. On the other hand, the offices of state treasurer and county treasurer appear in all previous Constitutions. The offices of state treasurer and county treasurer under all of our Constitutions are constitutional offices. The office of tax collector under none of them is a constitutional office. It is the contention of the appellant that section 125 deals with the incumbents of three offices, namely, those three mentioned, while, on the other hand, the appellee contends that the words "tax collector" rather deal with the duties

of an officer, and not with an officer himself; that is to say
that, under this section, any officer, regardless of the office
held by him, who collects or receives any state or county
taxes, is a tax collector, and therefore within the terms of
this section.   It is certain, however, that this section is
beyond doubt dealing with the incumbents of the offices of
state treasurer and county treasurer.   These are constitu-
tional offices, and, while their duties are not set out in de-
tail in the Constitution, but are left to the legislature to
prescribe, it is certain that it is with the incumbents of
these two offices that the Constitution makers were deal-
ing in this section.   The three offices are mentioned to-
gether.   It would be unusual and out of the ordinary, then,
if the Constitution makers intended in the first two in-
stances to deal with the incumbents of two offices, and in
the last instance to deal with the functions and duties of
any office to which the legislature might empower the re-
ception or collection of some particular tax.   If this be
true then there are numerous state officers, both constitu-
tional and statutory, who would come under this definition
of "tax collector."

This is a misconception of the use of the term "tax col-
lector."   The Constitution makers in all three instances
were referring to the incumbent of the office named by
them, namely, the office of state treasurer, the office of
county treasurer, and the office of tax collector.   This is
perfectly plain when we consider the previous and subse-
quent laws of the state dealing with the tax collector.   In
all of the previous Codes of Mississippi this office is dealt
with.   In some of the statutes this officer is referred to as
the collector, in others as collector of taxes, in others as
tax collector.   These words are used in numbers of in-
stances, interchangeably.   Turning especially to the Code
of 1880, which was in force and effect when the Constitu-
tion was made, it therein appears that the office of tax
collector was a well-recognized and well-understood office,
and that the tax collector was the officer in each county
who generally collected the state and county taxes, with

powers to distrain and enforce the collection of these taxes. Section 347 of this Code provides that the sheriff of each county shall be tax collector therein, and for the giving of a separate bond as sheriff and also as tax collector. Section 466 provides for the compensation of the tax collector. Section 488 provides how the tax collector shall collect taxes from a person about to leave the county. Sections 510, 511, 512, 515, and others provide for the collection of state and county taxes by the tax collector. Many sections of this Code deal with the office and the duties of tax collector. It is also to be noted that section 514 provides for the payment of certain taxes under certain conditions to the state auditor. The sections of this Code deal with the office and duties of tax collector, and treat it as a separate and distinct office.

The various opinions of this court dealing with this subject have always considered that there was such a separate and distinct office as tax collector under all of the laws of the state, except an act in 1843 (Laws 1843, chapter 1, section 7) provided that the office of tax collector should be abolished, and all duties required by law of the tax collector should be performed by the sheriffs of the several counties. *Griffing* v. *Pintard*, 25 Miss. 173. Statutes once combined the offices of tax assessor and tax collector. Later on the two offices were held by one person elected sheriff in accordance with statutes similar to that of section 347, Code of 1880. An act of the legislature of 1822 (Rev. Code 1824, chapter 53, section 3) provided for an annual appointment by the governor of a collector and assessor of taxes for each county. *McNutt, Governor* v. *Lancaster et al.*, 9 Smedes & M. 570.

The case of *Moore* v. *Foote, Governor*, 32 Miss. 469, decided in 1855, is very much in point. Under the law then and now the sheriff of each county was also the tax collector. In dealing with these two officers it is there said:

"This action was brought on a tax collector's bond; and although the statute subsequently passed, provides that the duties required by law to be performed by the tax col-

lector, should be performed by the sheriff, yet the inten-
tion of the law is merely that the same individual shall
perform the duties of both offices.   They are, however, sep-
arate and distinct, and in addition to the bond of the in-
dividual as sheriff, the statute requires him to execute a
bond, and take an oath of office, as tax collector.   .   .   .
The duties and responsibility of the individual in the dif-
ferent capacities in which he acts, are as distinct as though
each office was held by a different individual."

In the case of *Byrne* v. *State,* 50 Miss. 688, it is there
stated that: "The office of tax collector exists, with well-
defined duties and responsibilities in the present Code."

, Other cases dealing interestingly with this subject are
*French* v. *State,* 52 Miss. 759; *Hyde* v. *State,* 52 Miss. 665;
*Harris* v. *State,* 55 Miss. 50; *State* v. *Matthews,* 57 Miss. 1;
*State* v. *Harney,* 57 Miss. 863.   Again in the case of *State*
v. *Thibodeaux,* 69 Miss. 92, 10 So. 58, this court dealt with
the powers of sheriff and tax collector.   In the case of
*State* v. *Tonella,* 70 Miss. 701, 14 So. 17, 22 L. R. A. 346,
in discussing the office of assessor, and in speaking of sec-
tion 138 of the Constitution, providing for this office, the
court said that:

"It is to be presumed that the framers of that instrument
intended to provide for the performance by him, substan-
tially at least, of those duties which have hitherto per-
tained to his office"—citing *French* v. *State, supra.*

The Constitution framers were familiar with the pre-
vious statutes of this state dealing with the office of tax
collector.   They knew that for a while the offices of asses-
sor and collector were held by one person.   They knew that
for a long time previous to the adoption of this Constitu-
tion the person elected sheriff was by statute also made the
tax collector in his county.   The office of sheriff and tax
collector originally had separate and distinct powers in-
cident to each.   For many years these two offices have
been filled by the same person, the sheriff; who is most
generally known as sheriff and tax collector.   Being cog-
nizant of both the statutory and judicial history of these

offices in section 125 of the Constitution the makers of it provided for the removal in the manner there prescribed of three officers, namely, state treasurer, county treasurer, and tax collector, naming the offices, and not the duties or functions, to be performed by the incumbents of offices. Only one state officer is named, namely, the state treasurer, though, as above pointed out, the state auditor was empowered to receive or collect taxes of a certain kind. At the time of the adoption of this Constitution, as shown by these statutes and judicial utterances of this court, there was an office generally known and recognized as that of tax collector, with well-understood duties and powers, which were the collection of state and county taxes in the counties. The office of tax collector is a county office, and by statute is held by the person who is elected sheriff. That this is the meaning of this section is also made manifest when we look at the statutes recommended by the able code commissioners who drafted the Code of 1892, and which were adopted by the legislature of that year, and have been subsequently readopted without change in the Code of 1906 and Hemingway's Code. These sections in the Code of 1906 are 2387, 2388, 2389, 2390, 2391, 2392, 2393 and 2394 (Hemingway's Code, sections 4779, 4780, 4781, 4782, 4784, 4785, 4786 and 4787). Section 2394 reads as follows:

"If the examiner report any state or county treasurer or any tax collector to be a defaulter, it shall be the duty of the Governor to notify the attorney-general in case of the state treasurer, or the proper district attorney in case of a county officer, of the facts, and require him to institute proper proceedings in court for the investigation of such accounts and the judicial determination of the *status* thereof."

It will be there noted that the legislature provided that the governor notify the attorney-general in case of default of a state treasurer, and then provides that he notify the proper district attorney in case of a county officer. This section expressly recognizes that the only state officer re-

ferred to in the Constitution who can be removed by the governor is the state treasurer, and that both·the county treasurer and the tax collector are county officers.

The demurrer challenges the right of the governor to act in this matter for the reason that the state insurance commissioner is not a tax collector under the provisions of this section of the Constitution.    This section of the Constitution only refers to the county tax collector, as above stated.    It follows that the insurance commissioner is not such a tax collector.

The cause is reversed, the demurrer sustained, and the proceedings dismissed.

*Reversed and dismissed.*

ETHRIDGE, J. (specially concurring).    I concur specially in the conclusion reached by my brethren, but base my conclusion along entirely different lines of reasoning, and will set forth my views.

Section 125 of the state Constitution of 1890 reads as follows: "The governor shall have the power, and it is hereby made his duty, to suspend alleged defaulting state and county treasurers, and defaulting tax collectors, ·pending the investigation of their respective accounts, and to make temporary appointments of proper person to fill the offices while such investigations are being made; and the legislature shall provide for the enforcement of this provision by appropriate legislation."

This section in its concluding clause enjoins upon the legislature to provide for the enforcement of the provision by appropriate legislation, manifesting the intention and idea that there should be legislation to make the section effective.    The legislature, in pursuance of these provisions of the Constitution, has enacted section 2387, Code of 1906 (section 4779, Hemingway's Code), reading as follows:

"The governor shall have the power, and it is his duty, to suspend alleged defaulting state and county treasurers and defaulting tax collectors pending the investigation of

their respective accounts, and to make temporary appointments of proper persons to fill the offices while such investigations are being made."

And also section 2388, Code of 1906 (section 4780, Hemingway's Code), reading as follows: "The governor is authorized, when he deems it proper, to appoint an expert accountant, whose duty it shall be, under the direction of the governor, to audit and examine the books, accounts, and vouchers of all officers, state or county, or of any of the state educational, charitable, or reformatory institutions, or of the officers thereof, or of any other institution supported in whole or in part by the state."

And also section 2389, Code of 1906 (section 4781, Hemingway's Code), reading as follows: "The governor shall have power to direct and control the examiner; and, when he deems it necessary, may require him to examine the accounts of any state or county officer charged with the duty of collecting or disbursing any part of the public revenue, and shall fix his compensation at not exceeding seven dollars a day while actually employed, the examiner to pay his own expenses; and the governor shall prescribe the time for which he shall be employed."

And also section 2392, Code of 1906 (section 4785, Hemingway's Code), reading as follows: "The examiner shall make report to the governor under oath, of the result of any examination he may be required to make, and show therein the true condition and state of the books and accounts examined at the time of his examination. Such reports shall be public records."

And also section 2393, Code of 1906 (section 4786, Hemingway's Code), reading as follows: "Whenever it shall be alleged to the governor, credibly, that the state treasurer or any county treasurer or any tax collector is a defaulter, the governor shall direct the examiner forthwith to examine the records, books, and accounts of such treasurer or tax collector, and as soon as practicable to report the condition of such officer's accounts. If the report show such officer to be a defaulter or short in his accounts, the

governor shall at once suspend him, and appoint some other person to perform the duties of the office pending the investigation of his account."

It will be observed from a reading of the above sections of the Constitution of 1890 and of the statutes that the Governor is required to commission the person appointed to make the examination, and that such examiner shall report to the governor, under oath, and such report shall be a public record.

Section 127 of the Constitution of 1890 provides: "All commissions shall be in the name and by the authority of the state of Mississippi, be sealed with the great seal of state, and be signed by the governor, and attested by the secretary of state."

Section 125 of the Constitution, not being self-executing, and the statutes enacted in aid thereof, requiring the governor to do and perform certain things in the steps taken by the statute, make it necessary for the governor to have all the foundations prescribed by law complied with in the manner therein provided. The power conferred upon the governor is one of great importance, and is to be exercised and pursued without hearing or notice in so far as the officer is concerned, up to and including the act of suspension. The general rule is that officers exercising special powers must follow the conditions, and the record must so show, warranting the exercise of the power.

In the present case the proceedings do not show that the conditions upon which the power is to be exercised exists. It is not alleged that the examiner was commissioned and such commission attested by the secretary of state, and it does not show that the examiner so appointed reported to the governor under oath, as is required by section 2392, Code of 1906 (section 4785, Hemingway's Code). The declaration alleged that the appellant was duly elected at the last general election, and duly qualified, and was commissioned as insurance commissioner of the state of Mississippi, and that it became his duty to collect certain taxes, *ad valorem,* privilege, and license taxes, from the

insurance companies and agents doing business in the state of Mississippi, and in the performance of his duties large sums of money came into his hands, and that it was his duty to pay over all moneys collected into the treasury, and that, prior to the date of the filing of the suit, the governor having received information through certain proceedings instituted by the revenue agent's office that appellant had failed to account for moneys collected by virtue of his office, and having received information from statements made by the appellant which in effect acknowledged that he had failed to account for certain tax moneys received by virtue of his office, and having received information through the appointment of an investigating committee of the house of representatives at the last session of the legislature, and having made inquiry of the revenue agent's office as to the condition of the accounts of said appellant's office, and it having been through this source alleged to him (the governor) credibly that the appellant was in default in the payment of moneys collected by him and due the treasurer of the state of Mississippi, the governor, by virtue of sections 2388, 2393, Code of 1906 (sections 4780, 4786, Hemingway's Code), appointed J. L. Davis, an expert accountant, and directed him forthwith to examine the books of the appellant, and ascertain if he had faithfully and truly accounted for and paid into the state treasury all tax moneys and other moneys received by him by virtue of his office, and that the said Davis, acting under and by virtue of the authority of this appointment, did examine said books, and made certain written report to the governor, in which report he stated that the appellant had failed to account as required by law for tax moneys received and collected by him, and was in default of moneys received during the present term of his office, and that, said expert accountant having completed the audit of said books as directed, and having filed said report, a copy of which is alleged to be made Exhibit A to the declaration, it became the duty of the governor, under section 2393, Code of 1906 (section 4786, Heming-

way's Code), to suspend said appellant, and to appoint some other person to perform the duties of the office of insurance commissioner pending the investigation of his books and accounts, and that the governor had received the said report, and suspended the appellant, and appointed Coody to take charge of said office, a copy of the proclamation of the governor by which the appellant was suspended being made Exhibit B to the declaration. It is further alleged that a commission was issued by the governor and secretary of state to said Coody, and that Coody duly qualified and filed the bond as required by law, and took the oath of office, and made demand for the possession of the office, which was refused by the appellant, whereupon this suit was brought to obtain possession of said office.

Neither the declaration nor any of the exhibits show that the accountant, Davis, was ever commissioned to make the audit; neither does it show that the accountant, Davis, made a report to the governor, under oath, of the condition of the accounts of the insurance commissioner's office. The report made an exhibit shows a number of items against the insurance commissioner which would have no bearing upon the question of his default. It also sets forth certain amounts paid over by the insurance commissioner to the state revenue agent prior to the alleged examination and the said suspension.

Wherever a power of this kind is to be exercised. and especially where it is without hearing or notice, the record must show a strict compliance with all the conditions imposed as conditions to the exercise of the power. No presumption can be indulged in support of the act, and none ought to be indulged. The rule is stated in *Bolivar County* v. *Coleman,* 71 Miss. 832, 15 So. 107, as follows: "No presumption is indulged in favor of a court of limited and special jurisdiction, and, where the jurisdictional facts do not appear of record, its judgments are void."

In *Lake* v. *Perry,* 95 Miss. 550, 49 So. 569, it was held by the court that the power conferred upon the chancery court by Code of 1906, sections 543 and 544 (Hemingway's

Code, sections 300 and 301), authorizing the removal of the disabilities of minors, is special and statutory, and that all of the conditions imposed on the exercise of the power must be shown by the record in order to support a judgment or decree. The same was held in *Jackson* v. *Jackson,* 105 Miss. 868, 63 So. 275, Ann. Cas. 1915D, 489, and *Hardy* v. *Pepper,* 128 Miss. 27, 90 So. 181. These cases held that the exercise of the statutory power by the chancery court was as to matters which were not of a judicial nature, but which were exercised by the court in accordance with the statute.

In *Garner v. Webster County,* 79 Miss. 565, 31 So. 210, the court held that the board of supervisors in creating stock law districts were exercising a special and limited jurisdiction, and, unless all the jurisdictional facts appeared affirmatively in the record, that the order of the board creating such a district was void. To the same effect is *Ferguson* v. *Monroe County,* 71 Miss. 524, 14 So. 81; *Corbett* v. *Duncan,* 63 Miss. 84; *Loeb* v. *Duncan,* 63 Miss. 89; *Rogers* v. *Hahn,* 63 Miss. 578; *Deberry* v. *Holly Springs,* 35 Miss. 385; *Wilson* v. *Wallace,* 64 Miss. 13, 8 So. 128.

The relator not having set forth all the facts necessary to sustain his right to maintain the suit, the demurrer should have been sustained, and the declaration dismissed. I regret, however, that I cannot agree with the construction placed by my brethren upon section 125 of the Constitution of 1890. If this were a mere statute being construed, which could be amended by the legislature, I would express no opinion in opposition to the views expressed by my brethren, though I could not agree it was the proper construction. But, inasmuch as the section is a part of the Constitution, over which the legislature has no kind of control, I deem it proper to set forth my views with reference thereto. The section of the Constitution was probably placed in the Constitution to meet the condition brought about by the construction placed by the court upon section 175 of the state Constitution, under which it was held that a public officer could not be removed from office

even though convicted of a crime unless he was also indicted by a grand jury, and that the method prescribed in section 175 of the Constitution was exclusive of all other methods except that of impeachment. *Ex parte Lehman,* 60 Miss. 967. The legislature throughout the history of the state, notwithstanding this construction by the court, has enacted statutes authorizing removals from office under different conditions and by varying methods. The purpose of section 125 of the Constitution of 1890 was not to remove an officer permanently from his office, but was merely to remove him temporarily while the accounts of his office were being investigated, so that the state during the investigation would have complete control of the books and records of the office, and, when this investigation was finished, the officers would by that act be reinvested with his office unless and until he was tried and convicted in accordance with section 175 of the Constitution of 1890, or impeached by the legislature under section 50 of the Constitution. The use in the section of the words, "defaulting state and county treasurers, and defaulting tax collectors," indicate that it was not the purpose of the makers of the Constitution to suspend officers generally, but to suspend those collecting and disbursing the public revenues. The dominant purpose of the section was to protect the public revenue rather than to deprive officers of office. It must be presumed that the men in the constitutional convention, in using the term "tax collectors," intended to use that term in its ordinary legal sense, and, inasmuch as they did not provide for a tax collector in the Constitution, but left the whole subject of providing for tax collectors to the legislative discretion, they intended section 125 of the Constitution to reach all kinds of officers who exercised the functions of a tax collector, whether he had other duties of office to perform or not.

In 4 Words and Phrases, Second Series, p. 856, a tax collector is defined: "A 'tax collector' is a public officer, and is so treated in the statute relating to the collection of taxes and the compensation of the collector"— citing *Massie* v. *Harrison County,* 129 Iowa, 277, 105 N. W. 507.

"A 'tax collector' is one whose duty it is to enforce the collection of taxes, the tax gatherer, the agent of the county to collect its dues, and does not refer to a county treasurer, to whom the taxes were paid over by the person intrusted with the collection thereof"—citing *Hubbell* v. *Board of Com'rs of Bernalillo County,* 13 N. M. 546, 86 Pac. 430.

In 8 Words and Phrases,. First Series, p. 6886, a tax collector is defined as follows: "A 'tax collector' is a tax gatherer. He turns the money which he collects over to the treasurer, if he be not treasurer"—citing *Mutual Life Ins. Co. of New York* v. *Martien,* 27 Mont. 437, 71 Pac. 470.

"The 'tax collector' is the official representative of the public in the matter of the collection of taxes. He is empowered to enforce collection by resort to summary remedies, and upon sale he executes the papers evidencing the same. For the exercise of those remedies the tax list and warrant are his sufficient authority. Upon him alone devolves the duty of providing the taxpayer with the proper evidence of his payment of taxes and its application"—citing *Lobban* v. *State,* 9 Wyo. 377, 64 Pac. 82.

"A collector of taxes is a public officer whose duty it is to collect the taxes and pay the same into the treasury of the state or to the parties entitled"—citing *State* v. *Nicholson,* 67 Md. 1, 8 Atl. 817.

"A collector is an officer who collects or receives taxes, duties, or other public revenues. It is sufficient if he is authorized by law to receive the money for and on behalf of the public, and he need not possess the power to enforce payment by a legal process"—citing *State* v. *Moores,* 52 Neb. 770, 73 N. W. 299.

Mr. Black in his Law Dictionary, under the title "collector," defines: "One authorized to receive taxes or other impositions; as 'collector of taxes.'"

Under the word "tax," Mr. Black defines tax as follows: "To impose a tax; to enact or declare that a pecuniary contribution shall be made by the persons liable, for the support of government."

By reference to sections 2625, 2629 and 2630, Code of 1906 (sections 5090, 5095, and 5096, Hemingway's Code), it will be seen that the insurance commissioner is charged with the duty of collecting and paying over certain taxes. In section 2625, Code of 1906 (section 5090, Hemingway's Code), a tax of three per cent. on the premiums received by insurance companies is imposed on certain companies. By section 2629, Code of 1906 (section 5095, Hemingway's Code), certain license taxes, and also certain premium taxes, are imposed on certain insurance companies, and these taxes are to be in lieu of all other taxes. These and other taxes collected by the insurance commissioner are not collected by or paid to the county collectors, but are paid to other officers, that is, to state officers, and such state officer is necessarily a tax collector. These sums amount to hundreds of thousands of dollars in the course of the year, and constitute a considerable portion of the public revenue.

Under section 3894, Code of 1906 (section 6621, Hemingway's Code), certain taxes are paid to the county collector, certain others to the auditor of public accounts, and throughout the history of the state taxes have been paid partly to the county collector and partly to the state collector. The auditor of public accounts now has, and has had since the Code of 1880, the power to collect certain *ad valorem* taxes, and certainly is a tax collector. The Code of 1880 generally was in force when the constitutional convention sat, and it contains many provisions for the collection of taxes through other officers than county tax collectors. Under Code of 1880, section 347, the sheriff was by statute made the county tax collector. This section was brought forward in section 4143, Code of 1892 (section 4694, Code of 1906; section 3111, Hemingway's Code).

In section 514, Code of 1880, it was provided that a person having taxable property in the counties where they do not reside may pay taxes thereon to the auditor. Section 564, Code of 1880, requires the auditor to make a

monthly settlement with the state treasurer on account of money received, and the amount of county taxes collected by him to be placed to the credit of the proper county, and the levee tax, if any, to the proper levee board. By section 587, Code of 1880, it is provided that the privilege tax under the preceding section shall not be taxed by any county, and not exceeding fifty per cent. by any municipality, etc., and that taxes imposed on insurance, telegraph, or sleeping car companies be paid directly to the state treasurer, and license received from the auditor of public accounts. By section 588, Code of 1880, the privilege tax imposed on banks of deposit or discount in cities of more than four thousand inhabitants shall be paid directly to the state treasurer, and license be obtained from the auditor of public accounts. By section 604, Code of 1880, it is provided that the taxes assessed against railroads under the provisions of the chapter shall be paid to the auditor of public accounts within the time allowed other taxpayers, and, if not paid, he shall proceed to collect in accordance with the requirements of that section, which provide a distress warrant against the company for the amount thereof, and empowers the auditor of public accounts to do all acts and things which any collector of revenue is authorized to do by law, and, should he fail to realize the tax and cost from the sale of the personal property, he is authorized to sell all property of such defaulting railroad lying within the state, together with its franchises, after giving notice, etc., and to put the purchaser in possession of such property. In other words, under the Code of 1880 and the law in force when the constitutional convention sat, all the taxes which come to the state government from railroad property were payable to the auditor of public accounts. By section 608, Code of 1880, it is provided that, if railroads would accept the provisions of the act, they could pay a gross sum therein named to the state treasurer on the warrant of the auditor of public accounts as a privilege tax in lieu of all other taxes, and the taxes on most of the railroad property was so collected.

By chapter 8, Laws of 1890, enacted in the very year in which the constitutional convention sat, the revenue agent was empowered to sue for and collect all taxes due and unpaid, and to turn the same into the state treasury. By section 3 of this act the 'legislature expressly recognized the existence of the state tax collectors. In this section the revenue agent was given the power to sue for all revenues or debts due or hereafter to become due when delinquent to the state, counties, levee boards, or municipalities in the state, from officers, persons, or corporations or property liable for the same, in all cases where any funds have been collected by any fiscal officer of the state, county, levee board, or municipality, and have not been paid over to the proper parties, etc. In this section it is provided:

"In all cases where any such fiscal officer has collected or received money or funds, and has not paid over or accounted for same; in all cases where tax collectors of the state, counties or levee boards or municipalities have failed to collect, or have collected and failed to pay over taxes due, whether general, special, poll or privilege; or where as such tax collectors, funds have been collected as taxes due when none were due, or where they, in any other manner, have unlawfully exacted taxes as due, or where they have collected taxes not charged to them, and have not accounted for and paid over the same; or where such tax collectors or other fiscal officers of the state, counties, levee boards or municipalities have received unlawful or improper credits in their settlements as such, or where any of said tax collectors or fiscal officers have by virtue of their office, collected or received public funds, and have not accounted for and paid over the same," etc.

While the Constitution uses the word "collectors," and uses the word "state" for "state treasurer," it plainly implies both state and county tax collectors. There used to be such things in grammar as treating words written into a sentence by implication to save needless repetition. If the section of the Constitution be looked at in this light, it could and ought to be read "defaulting state and county

tax collectors." The section, it seems to me, clearly implies both, and there is nothing in the language that would indicate any purpose whatever to exclude state tax collectors. This idea was followed out by the same learned code commissioners referred to in the majority opinion in section 2393, Code of 1906 (section 4786, Hemingway's Code), "or any tax collector is a defaulter," the legislature clearly understanding that section 125 of the Constitution embraced any and every kind of tax collector exercising authority under the state government.

It seems to me that it is an awkward construction that makes the statute apply to one person receiving the public revenue and not apply to another person doing exactly the same thing. If the section was intended to be limited to county tax collectors, it would have been unnecessary because the legislature would have power under section 139 of the Constitution to empower the governor to remove a county officer or municipal officer under such conditions as the legislature should see proper to impose. An officer has no vested right to an office independent of conditions imposed in the Constitution. He takes it subject to the exercises of the power by the officer intrusted with the power. It may be that those having power will abuse it, but a court can only deal with the law as it finds it, and cannot relieve hardships that may result from the exercise of the power conferred.

I am of the opinion that the proceeding required to be instituted by the governor under section 2394, Code of 1906 (section 4787, Hemingway's Code), for "the investigation of such accounts and the judicial determination of the *status* thereof," is an act to be done subsequent to the suspension, but should follow within a short time thereafter, and that this proceeding must be conducted by the officers named in the statute, and cannot, under the law as it stands, be conducted by the state revenue agent. It is true the state revenue agent may sue for any money due the state by such officer, but the judgment in such case does not necessarily reflect the judicial determination of

the *status* of such accounts.   The judgment in such case would be for a specific sum.   The object of the statute embraces more than the mere recovery of money due.